# GARNS v. ROLLINS.

## No. 2343.   Decided June 20, 1912 (125 Pac. 867).

WATERS AND WATERCOURSES—PERCOLATING WATERS—RIGHTS AC-
QUIRED.   Where an owner of land collected into a pond thereon
water from springs, seepage, percolation, and an artesian well
sunk on his land, and by ditches conveyed the water to different
parts of his land for irrigation, and constructed an artificial
watercourse through which water was conveyed into a ditch
running along the side of an easement and right of way of
another, who during the irrigation season of each year for
the last nine years used the water in irrigating his land, the
latter did not acquire any prescriptive or vested right in the
water as against the owner without reference to the question
as to whether the common law rule that water percolating
through the soil without any definite channel is a part of the
freehold should be modified, and the owner had the absolute
right to intercept the water before it left his premises.[1]

APPEAL from District Court, Second District; *Hon. J. A.
Howell,* Judge.

Action by Sarah E. Garns against C. O. Rollins.

Plaintiff appeals from a judgment granting insufficient
relief.

REVERSED AND REMANDED WITH DIRECTIONS.

*Edwards & Ashton* for appellant.

*Jas. F. Smith* for respondent.

---

[1] Sullivan v. Mining Co., 11 Utah, 438, 40 Pac. 709, 30 L. R. A.
186; Crescent. Min. Co. v. Silver King Min. Co., 17 Utah, 444, 54
Pac. 244, 70 Am. St. Rep. 810; Willow Creek Irr. Co. v. Michaelson,
21 Utah, 248, 60 Pac. 943, 51 L. R. A. 280, 81 Am. St. Rep. 687;
Herriman Irr. Co. v. Keel, 25 Utah, 96, 69 Pac. 719; Fayter v.
North, 30 Utah, 156, 83 Pac. 742, 6 L. R. A. (N. S.) 410.

## STATEMENT OF FACTS.

This is an action involving the title and the right to use certain waters which accumulate upon plaintiff's land. The appeal is on the judgment roll alone. The findings of fact, all of which respond to and are within the issues presented by the pleadings, in substance, are:

That the source of the water in controversy is on a fourteen-acre tract of plaintiff's land. That for more than thirty years the water has been collected in a body on said land thereby forming a pond or reservoir. That the pond is supplied by "a large number of streams of water arising and seeping out from and upon the soil of said land in the form of springs, seepage, and percolation," and by an artesian or flowing well which was sunk upon said land by plaintiff's predecessors in interest about fifteen years prior to the bringing of this action. That the well has continuously flowed about forty gallons of pure water per minute. That during the last thirty years plaintiff's predecessors in interest in irrigating and cultivating the easterly portion of the land on which the pond is situated "have greatly increased the flow of percolating and seepage water into said reservoir or pond. That during each and every year of the period last above mentioned the plaintiff's predecessors in interest have expended large sums of money and labor in cleaning out, enlarging, and improving said pond." That for thirty years plaintiff and his predecessors in interest have maintained an artificial water-course leading from said pond and running in a westerly direction to the west line or boundary of the land, and during all of said time have used said artificial water-course to convey the water collected in the pond to a thirty-six-acre tract of plaintiff's land adjoining the parcel upon which the pond is situated and there used it in irrigating the easterly portion of the thirty-six-acre tract of land.

"That said use during all of said months (April, May, June, July, August, and September) for the last thirty years has been continuous, uninterrupted, adverse, open, peaceable, and under claim of right, and that the right of

the plaintiff and her predecessors in interest has not during all of said time, except in the year 1911, been challenged or questioned by the defendant or any one else. That after having devoted said waters to the uses aforesaid on the easterly portion of the tract of land second above described, the portion designated in plaintiff's complaint herein on file as block 5 of Steuben Rollins' survey became saturated and soaked with water, and that considerable quantities have seeped and percolated through the soil and have arisen to the surface thereof, and some of the same have, during the early months of each year during said nine years' period and during the whole of the wet season, accumulated upon the surface of that portion known and designated in plaintiff's complaint as meadow or lowland and from thence into Rollins' lane, or right of way. That plaintiff and her predecessors in interest, in order to drain said block 5 of Steuben Rollins' survey and convey away therefrom the waters accumulating therein and thereon as aforesaid, constructed at divers times during said period, as their necessities required, certain artificial watercourses through which said waste or percolating waters were conveyed into a ditch running along the easterly side of said easement and right of way belonging to the defendant and G. W. Rollins, and that said last-mentioned waters have, during the irrigating seasons of each and every year for the last nine years, flowed in a northerly direction along the said easement and right of way and have been used in the irrigation of the defendant's land. That all of the waters so flowing into said easement and right of way during said period of nine years have been percolating, draining, and artifically developed waters. That on or about the 1st day of June, 1911, and divers times since that date, contrary to and against the will of the plaintiff, defendant, in disregard of the plaintiff's rights, knowingly and wrongfully diverted the waters flowing into said artificial watercourse leading in a westerly direction across the Rollins right of way to said block 4 of Steuben Rollins' survey, being the westerly portion of the parcel of land second above described. That the plaintiff was thereby deprived of the use and benefit of the waters de-

veloped by her and flowing from her land as aforesaid. That the defendant is the owner of a farm lying a short distance north of plaintiff's property with its easterly end line identical with the westerly side line of the easement and right of way belonging to the defendant and G. W. Rollins."

The conclusions of law deduced by the court from the findings of fact, so far as material to the questions presented by this appeal, are as follows:

"No. 2. That the plaintiff is entitled to a decree quieting and confirming her title to the waters described in her complaint herein on file as against the defendant and all persons claiming or to claim the same or any part thereof under or through said defendant, subject to the condition that the said waters shall be beneficially used by the plaintiff or her successors in interest, exclusively upon the land described in her said complaint.

"No. 3. That the plaintiff is entitled to an injunction perpetually enjoining the defendant and all persons claiming under or through him from interfering with the plaintiff or her successors in interest in using the said waters or any part so far as the plaintiff or her successors in interest use or seek to use the same beneficially for irrigation and culinary purposes exclusively on the land described in her complaint or upon any portion thereof.

"No. 4. That the defendant is the owner of a farm lying north of the land described in plaintiff's complaint, which said farm is west of the Rollins lane or easement, and judgment is hereby ordered to be entered accordingly. That the defendant is entitled to the use on said farm of all of the waters which arise, emanate, percolate, seep through, and spring from the land described in plaintiffs complaint which are not necessary to the beneficial irrigation and cultivation of plaintiff's said land."

The decree of the court, so far as material here, provides:

"That the plaintiff have judgment against the defendant, quieting and confirming her title to the waters arising, emanating, percolating, seeping through, and springing from the soil of the land described in plaintiff's complaint herein on

file as against the defendant and all persons claiming or to claim the same or any part thereof under or through said defendant, subject, however, to the condition that the said waters shall be used by the plaintiff or her successors in interest exclusively upon the land described in her said complaint and herein particularly described. It is hereby ordered, adjudged, and decreed that the defendant have judgment, and he is hereby decreed the use of all of the waters which arise, emanate, percolate, and seep through and spring from the soil of the land described in plaintiff's complaint which are not necessary to the beneficial irrigation and cultivation of plaintiff's said land. That the plaintiff is entitled to an injunction perpetually enjoining the defendant and all persons claiming under or through him from interfering with plaintiff or her successors in interest in using said waters or any portion thereof, so long as plaintiff or her successors in interest use or seek to use the same beneficially for irrigation and culinary purposes exclusively on the land described in her said complaint, or upon any portion thereof. That the plaintiff's title to said waters, subject to the right of the defendant to devote the same or portions thereof to the irrigation and cultivation of his said farm when the same are not required for the beneficial irrigation and cultivation of plaintiff's land, is adjudged to be quieted against all other claims, demands, or pretensions of the defendant, who is hereby perpetually estopped and enjoined from setting up any further or other claims thereto."

Plaintiff appeals.

McCARTY, J. (after stating the facts as above).

Appellant, in her assignments of error, assails the conclusions of law wherein the court finds that her title to the water in dispute is "subject to the condition that said water shall be beneficially used by the plaintiff or her successors in interest exclusively upon the land described in her said complaint," and that the defendant is entitled to the use of all the

water in question "which is not necessary to the irrigation and cultivation of plaintiff's said land." Appellant also objects to that part of the judgment in which defendant is "decreed the use of all the waters which arise, emanate, percolate, and seep through and spring from the soil of the land described in plaintiff's complaint which are not necessary to the beneficial irrigation and cultivation of plaintiff's said land." The contention made by appellant is that the conclusions of law and that part of the decree covered by the assignments of error are not supported by, nor do they respond to, the findings of fact made and filed in the cause. And she further contends that, under the facts as found by the court, she is entitled to a decree quieting her title to the water in controversy and giving her the right, without any limitations or restrictions in favor of respondent, to apply it to a beneficial use in any locality to which she may desire to convey it.

This claim is based upon the common law doctrine relating to the ownership of percolating water. Under the common law rule, sometimes referred to as the English rule, water which percolates through the soil without any definite channel was regarded as much a part of the freehold through which it courses as the clays, sand, gravel, and rocks found therein, and the owner (leaving out the question of malice) had the absolute right to intercept the water before it left his premises and make whatever use of it he pleased, regardless of the effect that such use might have on a lower proprietor through whose land the water, in its natural course, was wont to filtrate and percolate. (Gould on Waters, sec. 280; 3 Farnham on Water Rights, sec. 935; Long on Irrigation, sec. 33; Kinney on Irrigation, sec. 298; *Mosier v. Caldwell,* 7 Nev. 363; *Delhi v. Youmans,* 50 Barb. (N. Y.) 316; *Frazier v. Brown,* 12 Ohio St. 294; *Roath v. Driscoll,* 20 Conn. 533, 52 Am. Dec. 352; *Wheatley v. Baugh,* 25 Pa. 528, 64 Am. Dec. 721; *Chatfield v. Wilson,* 28 Vt. 49.

One of the cases cited and relied on by appellant is *Hanson v. McCue,* 42 Cal. 305, 10 Am. Rep. 299. In that case the court said:

"Water filtrating or percolating in the soil belongs to the owner of the freehold—like the rocks and minerals found there. It exists there free from the usufructuary right of others, which is to be respected by the owner of an estate through which a defined stream of water is found to flow. The owner may appropriate the percolations and filtrations as he may choose, and turn them to profit if he can. To hold otherwise would be to hold that the plaintiff here could lawfully claim a right to convert the lot of McCue into a mere filterer for his own convenience."

The doctrine thus announced was reaffirmed by the California court in the case of *Southern P. R. Co. v. Dufour,* 95 Cal. 615, 30 Pac. 783, 19 L. R. A. 92, *Gould v. Eaton,* 111 Cal. 641, 44 Pac. 319, 52 Am. St. Rep. 201, and *Los Angeles v. Pomeroy,* 124 Cal. 597, 57 Pac. 585, and has generally been accepted in that state until comparatively recent date. In this jurisdiction the common law doctrine as declared by the Supreme Court of California in the cases above mentioned, in so far as applicable to the questions litigated in which was involved the right of the owner of the land to the percolating water found therein, has been adhered to and followed. (*Sullivan v. Mining Co.,* 11 Utah, 438, 40 Pac. 709, 30 L. R. A. 186; *Crescent Min. Co. v. Silver King Min. Co.,* 17 Utah, 444, 54 Pac. 244, 70 Am. St. Rep. 810; *Willow Creek Irr. Co. v. Michaelson,* 21 Utah, 248, 60 Pac. 943, 51 L. R. A. 280, 81 Am. St. Rep. 687; *Herriman Irr. Co. v. Keel,* 25 Utah, 96, 69 Pac. 719; *Fayter v. North,* 30 Utah, 156, 83 Pac. 742, 6 L. R. A. [N. S.] 410.)

The general trend, however, of recent decisions in many of the states of the Union, is away from the English rule, or common law doctrine of unqualified and absolute right to a landowner to intercept and draw from his land the percolating waters therein. In these later cases the right of a landowner to subterranean waters percolating through his own and his neighbor's lands, and which is a common source of supply for the lands of two or more of them, is limited to a reasonable and beneficial use of the waters upon the land or to some useful purpose connected with its occupation and enjoyment. In 30 A. & E. Ency. L. (2 Ed.), 314, the writer, speaking of the rule last referred to, says:

"Under this doctrine it has been held that a landowner has no right, except for the benefit and improvement of his own premises or for his beneficial use, to drain, collect, or divert percolating waters therein where such act will destroy or materially injure the spring of another, the waters of which spring are used by the general public for domestic purposes; that he cannot drain, collect, or divert such waters for the sole purpose of wasting them; that the owner of land cannot gather percolating water by pumps or by natural means that it may be carried to a distant place for use by or sale to strangers having no right to it, in a case where the inevitable result would be to destroy a spring upon the land of an adjoining owner.    . . .    So it has been held that a landowner cannot collect percolating water by means of artesian wells and convey it away from his land for sale to a distant landowner to the injury of his neighboring landowners."

*Smith v. City of Brooklyn,* 18 App. Div. 340, 46 N. Y. Supp. 141, was a case in which the plaintiff was the occupant of a farm upon which was a stream of water running in a well-defined channel fed by springs and from other sources. The stream for more than fifty years had been dammed up forming a pond. The pond, which was of considerable value, was used by plaintiff, among other things, for securing ice. The defendant, for the purpose of furnishing the city of Brooklyn with a water supply, sunk a number of wells in the locality of the stream and pond and about 2400 feet therefrom, and connected therewith powerful steam suction pumps, built pumping stations, and constructed conduits to carry off the water as it came from the wells. The soil in the locality of these waterworks and of the surrounding country is of a sandy or gravelly nature through which water readily percolates. The pumping operations of the defendant dried up the creek and pond mentioned and resulted in the destruction of wells thoughout a considerable area of country in the locality where they were carried on. The trial court, following the rule of the common law relating to percolating waters, dismissed plaintiff's complaint. On appeal the Supreme Court said:

"While it is true that the city owned the land upon which it placed its structure, and all of its acts were done upon its own property, it did not, however, make the erections or do the acts

for the beneficial use and enjoyment of the land itself for any purpose of domestic use, agriculture, mining, or manufacturing. . . . No one dwelt thereon, or was expected to. No one used the water thereon, nor was it expected to be used in connection therewith. The sole purpose was to subordinate the use of the land to the particular purpose of a reservoir and conduit in which to gather, store, and carry water to a distant place for its benefit and profit, and for the enjoyment of strangers who have no claim or shadow of right to it as against the plaintiff. It was its purpose not only to take the water which might come by natural percolation upon its land, but also to use artificial means, and by powerful suction drain the adjoining land of its water. . . . By the construction of its conduit, the sinking of its wells, and the suction of its powerful pumps, the whole spring level of the surrounding country has been lowered, and running streams and ponds dried up."

It is also said in the opinion:

"It may be stated, with some degree of confidence, that no case will be found in this state—and our research has not enabled us to find one in any other state of this country—where the right has been upheld in the owner of land to destroy a stream, a spring, or well upon his neighbor's land, by cutting off the source of its supply, except it was done in the exercise of a legal right to improve the land, or make some use of the same in connection with the enjoyment of the land itself, for purposes of domestic use, agriculture, or mining, or by structures for business carried on upon the premises."

The court, after discussing and distinguishing some of the earlier cases on this subject, says:

"We have the fact, admitted by all legal writers, that a property right exists in percolating water of as high a character as the land itself—it is in fact a part of the land. It is a valuable right, and its use is usually indispensable to the enjoyment of the land wherein it is found. This right is only qualified by the equal right of every adjoining landowner. The right of use is supported in either, when, for purposes of use upon the land, or of the land, injury results to one as an incident to such use. But it seems . . . monstrous to assert that one landowner may deliberately and intentionally make an erection for the express purpose of draining the land of another of its percolating water, and thereby destroy streams, springs, ponds, and wells, and be supported in so doing upon the theory that it is the exercise of a legal right in the use of his land."

The rule announced in this case was followed in the case of *Forbell v. New York,* 164 N. Y. 522, 58 N. E. 644, 51 L. R. A. 695, 79 Am. St. Rep. 666. The syllabus, as published in 51 L. R. A. 695, of the last-mentioned case, which correctly reflects the opinion of the court, is as follows:

"The drainage of land of a private proprietor by city pumping works which exhaust from all the region thereabouts the natural supply of underground or subsurface water, and thus prevent the raising upon it of crops to which the land was and is peculiarly adapted, or destroy such crops after they are grown or partly grown, renders the city liable to him for the damages which he sustains, and entitles him to an injunction against the continuance of the wrong."

The court in that case cites with approval the case of *Smith v. City of Brooklyn, supra,* and refers to it as containing "a valuable discussion of the subject."

In several recent and well-considered cases the Supreme Court of California departed from, if it did not entirely repudiate, the doctrine of absolute right of the owner of land to the subsurface or percolating water therein as declared in *Hanson v. McCue, supra,* and in several other of its former decisions, and has established for that jurisdiction the new, or, as it is sometimes denominated, the "American" or "reasonable use" rule, which limits the right of the owner of the soil containing percolating water to a reasonable use of such water upon the land in which it is found. (*Katz v. Walkinshaw,* 141 Cal. 116, 70 Pac. 663, 74 Pac. 766, 64 L. R. A. 236, 99 Am. St. Rep. 35; *McClintock v. Hudson,* 141 Cal. 275, 74 Pac. 849; *Cohen v. La Canada Water Co.,* 142 Cal. 437, 76 Pac. 47; *Montecito, etc., Co. v. Santa Barbara,* 144 Cal. 578, 77 Pac. 1113; *Burr v. Maclay Rancho Water Co.,* 154 Cal. 428, 98 Pac. 260; S. C., 160 Cal. 268, 116 Pac. 715; *Barton v. Riverside Water Co.,* 155 Cal. 509, 101 Pac. 790, 23 L. R. A. [N. S.] 331; *Hudson v. Dailey,* 156 Cal. 617, 105 Pac. 748; *Los Angeles v. Hunter,* 156 Cal. 603, 105 Pac. 755; *Miller v. Bay Cities Water Co.,* 157 Cal. 256, 107

Pac. 115, 27 L. R. A. [N. S.] 772.   See, also, *Ex parte Elam*, 6 Cal. App. 233, 91 Pac. 811.)

The case last cited contains the following terse statement of the rule as now established in that state:

"No surface owner possesses the right to extract the subterranean water in excess of a reasonable and beneficial use upon the land from which it is extracted. Any additional extraction is not in the exercise of a right if by such exercise the rights of others are injuriously affected."

In the case of *Meeker v. East Orange*, 77 N. J. Law, 623, 74 Atl. 379, 25 L. R. A. (N. S.) 465, 134 Am. St. Rep. 798, the same question was involved, and the court, in an able and somewhat exhaustive opinion in which many cases are cited and discussed, adhered to the "reasonable use" rule and cites with approval the recent California cases above referred to. The facts of the case and the law as declared are summarized in the third and fourth syllabi as follows:

"3.   The defendant, a municipal corporation, for the purpose of supplying its inhabitants with water, acquired a tract of land and sank thereon a number of artesian wells, through which it drew out percolating underground water which, but for its interception, would have reached a spring, stream, and well upon plaintiff's land, and also withdrew percolating underground water from beneath the surface of his land to such extent as to damage his crops.   *Held*, actionable.

"4.   Percolating underground waters may not be withdrawn for distribution or sale if it therefrom result that the owner of adjacent or neighboring lands is interfered with in his right to the reasonable user of subsurface water, or if his wells, springs, or streams are thereby materially diminished in flow, or his land rendered so arid as to be less valuable for agriculture, pasturage, or other legitimate use."

Wiel, in his excellent work on Water Rights, third edition, reviews and discusses the California cases herein referred to, and in a note to section 1063, cites many recent cases from other states in which the so-called American or reasonable use rule was adhered to and followed.

The trial court, in deciding the case at bar, evidently followed the American or reasonable use rule as announced by the late California cases and decisions from other jurisdictions which have departed from the common law doctrine on this point. The case under consideration, however, is not one involving the rights of parties to subterranean waters which find their way by percolation through lands owned by different parties and which have been intercepted in and diverted from their natural course by one of the parties to the injury of the other. The question of ownership of the percolating subterranean waters is, at most, only incidentally involved. On the question of whether the conditions in this state demand or require a modification of the common law doctrine of percolating waters, we shall withhold our opinion until some case is presented calling for it. The reason we have devoted so much time and space to the discussion of the subject is that appellant bases her demand for a modification of the judgment upon the common law doctrine as declared in the decisions of this state herein referred to, and the trial court seems to have concluded that correlative rights of parties to subterranean waters percolating through the soil were in issue, and decided the case upon that theory. It is sufficient to here state, without approving or disapproving the doctrine of the reasonable use rule, that the facts as found by the court do not bring the case within that rule. The seepage or percolating water here involved is created by the artificial irrigation of appellant's land. True, as a result of this irrigation, the water sinks, seeps, and percolates into the soil of appellant's land and saturates it for a depth of several feet; it, nevertheless, is nothing more in fact and in law than surface or waste water. According to the facts found by the court, the water has been and is collected by appellant into the pond or reservoir hereinbefore referred to, and then by means of ditches it is conveyed to different parts of her land some of which "become saturated and soaked with water and that considerable quantities have seeped and percolated through the soil and have arisen to the surface thereof;

. . . that plaintiff (appellant) constructed certain artificial watercourses through which said waste or percolating waters were conveyed into a ditch running along the easterly side of said easement and right of way belonging to defendant and G. W. Rollins; and that said last-mentioned waters during the irrigating seasons of each and every year for the last nine years . . . have been used in the irrigation of defendant's land."

The law is well settled, in fact the authorities all agree, that one landowner receiving waste water which flows, seeps, or percolates from the land of another cannot acquire a prescriptive right to such water, nor any right (except by grant) to have the owner of the land from which he obtains the water continue the flow. The general rule regarding the right of the owner of land to surface water therein is stated by Mr. Farnham, in his work on Water Rights (page 2572), as follows:

"There is no right on the part of a lower appropriator to have surface water flow to his land from upper property. The owner of the soil on which it falls has an absolute right to it, and may do with it what he pleases. And the fact that surface water has flowed from the land of one man onto that of another for more than twenty years will not prevent the former from draining his land so as to cut off the flow."

In 1 Wiel on Water Rights (3 Ed.) p. 50, the author says:

"While artificial flow claimants may thus have priorities between themselves, they can have no right of continuance against the owner of the natural supply (the appropriator on the natural stream . . . ), except by grant, condemnation, or dedication (or by the rule of compulsory service where the water is distributed to public use). The chief instance of artificial flows in practice is where some stream owner has carried water to a distance and, after use, discharges it below his land or works. . . . Seeing the water come down, other parties arrive, build ditches below, receive the water, and put it to use. Yet unless they have a contract with the stream owner, they must generally rely upon continued receipt from him of such water at their peril. In such case the creator of this artificial flow may cease to allow it to escape."

And on page 52 it is said:

"In the absence of contract, the natural water right owner may cease the abandonment of waste from a ditch, and so use the water that none of it thereafter runs waste, or so that it runs off in a new place where people below no longer can get it. Long receipt by them of the water of itself gives no permanent right to have the discharge continued, whether by appropriation, prescription, or estoppel, even though the lower claimants built expensive ditches or flumes to catch the waste."

Numerous decisions are cited by the author in a note to the text which illustrate and support this doctrine. And again on page 54 it is said:

"Waste water soaking from the land of another after irrigation need not be continued, and may be intercepted and taken by such original irrigator, and conducted elsewhere, though parties theretofore using the waste are deprived thereof."

In the case of *Burkart v. Meiberg,* 37 Colo. 187, 86 Pac. 98, 6 L. R. A. (N. S.) 1104, 119 Am. St. Rep. 279, the plaintiff dug a ditch along the boundary of her land thereby intercepting and collecting the seepage created by the irrigation of her neighbor's land. The owners of the land from which the water seeped and percolated later dug a parallel ditch on their own land thereby cutting off plaintiff's supply. The water thus intercepted and collected the defendants carried by means of a ditch around plaintiff's land and irrigated other lands owned by them. The court said:

"The plaintiff certainly has acquired no vested right to compel the defendants to apply the waters, the right to the use of which they own, in such a way as that some of it will not soak into the ground, but escape and pass from the surface onto her land. The defendants have the right to change the place and manner of use or reduce the quantity applied on their lands, so that no water whatever will escape and reach the lands of plaintiff."

The facts of that case are somewhat similar to the facts in the case at bar.

Applying the well-settled principles of law as declared by the foregoing authorities to the facts in this case as found by the court, it necessarily follows that respondent acquired no prescriptive or vested right as against the appellant to the water in question, or any part thereof.

The cause is remanded, with directions to the trial court. to modify its conclusions of law and the decree so as to conform with the findings of fact, quieting appellant's title to the water in controversy without any restrictions therein in favor of respondent. Costs of this appeal to be taxed against respondent.

FRICK, C. J., concurs.

STRAUP, J. (concurring.)

The court found and adjudged the plaintiff the owner of the water. The judgment in such particular is not complained of by either party. The only complaint made is this:

The court, after so finding and adjudging, further adjudged that the plaintiff was required to use the water on a particular tract of land and could not divert and use it on other land. When it was found and adjudged that the plaintiff was the owner of the water, of which no complaint is made, I think the proper disposition of the case is controlled by the principle that an owner of water may divert and use it for beneficial purposes on any lands desired. That principle the judgment violates. I therefore concur in the modification of the judgment.