SMITHFIELD WEST BENCH IRR. CO. v. UNION CENTRAL LIFE INS. CO. et al. (FIRST NAT. BANK OF LOGAN et al., Interveners).

No. 6570. Decided November 10, 1943. (142 P. 2d 866.)

*Elias Hansen,* of Salt Lake City, *M. C. Harris,* of Logan, *Newel G. Daines,* of Salt Lake City, and *L. Tom Perry,* of Logan, for appellants.

*George C. Heinrich* and *Young & Bullen,* all of Logan, for respondent.

LARSON, Justice.

What rights can one acquire in the water that wastes or seeps from the lands of another? This dispute grew out of that question. Plaintiff brought suit in the District Court of Cache County against defendants to quiet title to certain waters and enjoin defendants from interfering with plaintiff's use thereof. Other parties claiming part of the waters intervened. About 1860 certain farmers living north of Logan, in Cache County, diverted and appropriated to use certain of the waters of Logan River. In course of time, the users of these waters organized themselves for distribution purposes, into the Logan Northern Irrigation Company, a mutual water company. The ditches and canals controlled by this system, extended from the Logan River almost to the town of Smithfield. Only one of its canals is directly involved in this action and will hereafter be referred to as the Logan Northern Canal. This canal extended in a general northerly direction to the northeast corner of Section 16, Township 13 North, Range 1 East, which point will hereafter be referred to as the Gunnel flume, and then west along a natural depression or wash along the south side of Hillyard Lane, down to or near the northeast corner of Section 17. This canal was used to bring water to the stockholders of the Logan Northern Company owning lands west of the east boundary of Section 16, and also as a waste ditch to catch and carry off the waste waters and seepage from the lands of the Logan Northern people east of the canal.

Plaintiff is also a mutual irrigation company, organized by water users of and about the town of Smithfield, owning lands west of the Logan Northern Company, and extending to Bear River. Their water rights date back more than 60 years, and are derived from several sources of supply. One of its canals, hereinafter referred to as the West Bench Canal, extends along the east side and north side of Section 17, for carrying water to the lands of that section. About 1885, a short part of the Logan Northern Canal above Gunnell flume and the part going down Hillyard Lane was con-

structed by people under the West Bench Canal, to bring to their lands in Section 17 the waste and excess waters from the Logan Northern Canal. For this construction work, however, they received shares of water right in the Logan Northern Canal. From that time until this action the West Bench Canal has received and used most of the waters coming through the Logan Northern Canal to Gunnell's flume.

Lying north and west of Gunnell's flume are the lands of defendants and interveners. Approximately fifty years ago, a ditch was made from the site of Gunnell's flume to divert waters from that point northward to the lands of defendants and interveners, hereinafter called appellants. This ditch was used only intermittently, as some years the lands were not farmed. There were years when the occupants of these lands had shares in the Logan Northern, and when they had shares in the Richmond Irrigation Company, whose ditch came down on the north side of Hillyard Lane to the site of Gunnell flume at that time. When these lands were farmed, the occupants built flumes or dams across the wash at Hillyard Lane at Gunnell flume to divert the waters of the Logan Northern Canal over the wash and into the ditch going north to the lands of appellants. Until 1928, these structures were somewhat makeshift and temporary, washing out frequently. Off and on during the years disputes arose between the West Bench people and appellants over the use of the waters from the Logan Northern Canal. The Logan Northern in 1928 entered into an agreement in writing with the predecessors in interest of appellants relative to Gunnell flume and the use of water at that point. In 1938, it entered into another written agreement with the West Bench Company relative to maintaining the ditch along Hillyard Lane west of Gunnell flume, and the use of the water at that point. In 1941 the West Bench Company commenced this action to determine the right to the use of such waters. The court decreed the water to West Bench and appellants seek a reversal of that judgment.

West Bench bases its claims to the waters upon two grounds: That the water was decreed to it in the case of

Utah Power & Light Co. v. Richmond Irrigation Company et al. (Dist. Ct. case) to which the West Bench and Logan Northern Companies were parties but appellants were not; and that it had used the waters adversely to appellants since 1885. Appellants by cross-complaint asserted right and title to the waters in themselves by: conveyance from the Logan Northern Company and by an adverse user against the West Bench Company. West Bench does not seriously insist that it has a decreed right to the water, nor do appellants rest the case upon a claimed conveyance. The nub of the controversy is: Has either party shown it has a right as against the other, to the use of the water coming through the Logan Northern Canal to the Gunnell flume? These waters are an accumulation from three sources: (a) Excess waters of the Logan Northern, undistributed to its stockholders; (b) waste waters flowing off the surface from irrigation of lands above this canal; (c) seepage waters from lands above the canal, seeping into the ditch. The proportion from each of these sources varies with the season.

What rights can be acquired in such water?

As to (a) the excess flow; the owner of a water right, after diversion from the stream is the owner and entitled to possession of the water itself, the corpus of the water as long as he retains it in his ditches or reservoirs, on his property or under his control. *Burkart* v. *Meiberg,* 37 Colo. 187, 86 P. 98, 6 L. R. A., N. S., 1104, 119 Am. St. Rep. 279; Weil, Water Rights in Western States, Vol. 1, page 50 ff. Once the water has passed beyond these conditions it is no longer the water or property of the prior user or appropriator. Under such conditions an appropriator cannot complain of the use of water by another below his point of diversion or place of use. *Wellsville East Field Irr. Co.,* v. *Lindsay Land & Livestock Co.,* 104 Utah 448, 137 P. 2d 634; *Wimer* v. *Simmons,* 27 Or. 1, 39 P. 6, 50 Am. St. Rep. 685; *Lakeside Ditch Co.* v. *Crane,* 80 Cal. 181, 22 P. 76; *Hargrave* v. *Cook,* 108 Cal. 72, 41 P. 18, 30 L. A. R. 390; *Hanson* v. *McCue,* 42 Cal. 303, 10 Am. Rep. 299. And for this reason

a lower appropriator or user cannot adverse the upper appropriator as to any water which the upper user willfully, or knowingly, or unavoidably permits to pass his point of diversion or place of use. *Burkart* v. *Meiberg,* supra, *Fairplay Hydraulic Min. Co.* v. *Weston,* 29 Colo. 125, 67 P. 160; *Lakeside Ditch Co.* v. *Crane,* supra; *Hanson* v. *McCue,* supra. And he can acquire no right under which he can prevent the upper user from making use of such water or compel the upper user or appropriator to let such water continue to flow down to him. *Burkart* v. *Meiberg,* supra; *Garns* v. *Rollins,* 41 Utah 260, 125 P. 867, Ann. Cas. 1915C, 1159; *Roberts* v. *Gribble,* 43 Utah 411, 134 P. 1014. As long as the water is under the control of the appropriator on his land or in his ditches or reservoirs or other things owned or controlled by him it is still his water and he may use it in any lawful place or for any lawful use he chooses, or may lease it or sell it. These excess or undistributed waters while in the canal of the Logan Northern and so under its control were its waters and no other could acquire any rights therein except by its consent. *Woolman* v. *Garringer,* 1 Mont. 535; *Hanson* v. *McCue,* supra; Weil, Water Rights in Western States, 3rd Ed., Vol. 1, page 50 ff.

As to (b) the waste waters or "flow off" from the irrigated lands above the canal, a slightly different situation exists. When these waters were distributed to the individual shareholders, and turned from the canals or laterals of the company into the private ditches of the users, all rights to the waters passed from the control of the company to the individual farmers. While in his ditch or upon his land it was his property and he could use it as he saw fit. When the water reaches the lower end of his land, he may again gather it into a ditch and convey it to any other land, ditch or reservoir he desires for further use; or he may lease or sell it. But once the water has passed onto the land of another and out of the control of the user, the right to use such water passes to the occupant of the land upon which it then is found, or may become water unused by any one

and subject to capture and use by the first person to capture and use it. If while so free, it flows into another stream it becomes part of such stream. *Fairplay Hydraulic Min. Co. v. Weston*, supra; *Roberts* v. *Gribble*, supra; *Garns* v. *Rollins*, supra; Weil, Water Rights in Western States, Vol. 1, page 53 ff. In this case, the Logan Northern captured in its ditch, took possession of, the waste waters involved in this action, mingled it with its other waters and distributed part of it to shareholders for irrigation of their lands. Among such shareholders were the appellants and their predecessors in interest and title, owners of shares in the Logan Northern. What has been said about this water applies with equal force to (c) the seepage water coming into the canal. From this it follows that all the waters in the Logan Northern Canal at Gunnell's flume are waters of the Logan Northern Company against whom neither the West Bench nor appellants have acquired any rights and that Logan Northern can make such disposition thereof as it could of any other waters it has and may bring down to the Gunnell flume. *Roberts* v. *Gribble*, supra; *Garns* v. *Rollins*, supra.

Now as to the relative rights of the West Bench and appellants to the use of these waters of the Logan Northern Company. The following facts rather clearly and definitely appear from the evidence: The Logan Northern Company's rights began about 1860, and prior to 1885 it had been so extended that the Logan Northern Canal had been constructed to or near the point referred to herein as Gunnell's flume, and the unused or excess waters and waste waters allowed to flow down a natural depression along Hillyard's Lane. About 1885 or 1886, the ditch was extended westward down this wash, substantially to Bear River. The people making this extension of the canal were for the most part owners of land in the West Bench area, but for their work in extending the canal received stock in the Logan Northern Canal. This extension of the canal to West Bench therefore became part of the system of ditches of the Logan Northern Company and not the ditch of the West Bench Company,

nor of the people who did the construction work. The Logan Northern paid for the construction on the same basis as it paid for all its other canals. As stockholders in the Logan Northern they were entitled to and received water from the Logan Northern through this ditch. The water such persons received was Logan Northern water, and as such was not subject to appropriation by them, nor to adverse user by them against the Logan Northern, nor could they obtain any rights thereto against anyone else except as stockholders in the Logan Northern Company. It is evident that from about that date until the commencement of this action, water flowed down this ditch from Gunnel flume as far as West Bench, subject to variations in quantity, and certain interruptions referred to hereafter.

As far as the evidence shows it was about the year 1907 that waters from the Logan Northern Canal were taken across the wash and Hillyard Lane into a ditch running northerly from there to and upon the lands now owned by appellants. It appears that these people had acquired some Logan Northern stock, so they as well as the people using the waters going west on Hillyard Lane were Logan Northern stockholders. Appellants' predecessors in interest were also stockholders in the Richmond Company, whose water came down a ditch on the north side of Hillyard Lane to a point near Gunnell flume, and then north to the lands now owned by appellants through the same ditch in which they took their Logan Northern water from Gunnell's flume. The record does not reveal how many West Bench people participated in the extension of the Logan Northern Canal west along Hillyard Lane, nor when, if ever, they parted with the Logan Northern stock, but it does appear that by 1935 there were only two Logan stockholders who received their water through the Logan Northern watermaster from the ditch down Hillyard Lane, although it does not appear how much stock they owned nor how much water they were entitled to receive. In the absence of any showing to the contrary, we must assume that such persons, or their successors in interest to the lands they owned are now the

owners of such rights in the Logan Northern. From September 18, 1916, to May, 1927, the West Bench Company was itself the owner of three shares of stock in the Logan Northern. Since about 1916 there has been more or less scrambling for the use of this water between appellants and their predecessors in interest and West Bench which gradually increased in frequency and intensity from that time onward. Certainly from that time on there has been no year that could count in a period of adverse user by either party.

What then as to the period prior to 1916? As indicated above, appellants' use begins about 1907. The evidence as to this nine year period does not justify a finding for appellant of seven years of adverse user. They, therefore, must fail as to a right by adverse use. The use of this water by people down the Hillyard Lane began about 1885 or 1886 and until 1907, a period of twenty years, there is no substantial evidence of any interruption of their user. But such people were shareholders in the Logan Northern Canal and received this water from such canal as such stockholders, as far as the record shows. Their use of the water was a use as shareholders in the Logan Northern Canal under and by virtue of such ownership or right. They were not initiating any new right or title as against any one. The Logan Northern was using this water for its stockhoders and since West Bench has shown no right or use other than that of the people who originally acquired it as Logan Northern Canal water, it has not established any adverse rights in itself. The waters of a mutual irrigation company belong to the users, the company being merely a distributing and apportioning trustee. Such was the Logan Northern Company. The water controlled by it may be used by any shareholders, subect only to the regulation thereof by the company for the benefit of the shareholders so none shall be deprived of his rights by the others. The company cannot sell any of the water without the consent of the stockholders or for nonpayment of dues if the articles of incorporation make the stock liable for such costs and expenses. Like-

wise the company cannot permit the water to be lost by non-use thereof as long as any shareholder desires to and is in a position to use the water. Water undistributed may be used by any stockholder in a position to use it. The shareholders are in effect owners in common of the waters with certain limitations as between one another governing the use thereof. Each may therefore use any water not being used by any other shareholder, as is the case with other owners in common. *Hough* v. *Porter*, 51 Or. 318, 95 P. 732, 98 P. 1083, 102 P. 728; *Stephens* v. *Beall*, 22 Wall 329, 22 L. Ed. 786; *Burbank* v. *Crooker*, 7 Gray Mass., 158, 66 Am. Dec. 470; *Tuttle* v. *Campbell*, 74 Mich. 652, 42 N. W. 384, 16 Am. St. Rep. 652; *Mullins* v. *Butte Hardware Co.*, 25 Mont. 525, 65 P. 1004, 87 Am. St. Rep. 430; *Bergere* v. *Chaves*, 14 N. M. 352, 93 P. 762, 51 A. L. R., N. S., 50, affirmed in *Chaves* v. *Bergere*, 231 U. S. 482, 34 S. Ct. 144, 58 L. Ed. 325.

From what has been said it follows that the waters in the Logan Northern Company Canal at Gunnell's flume, and involved in this action, are the waters of the Logan Northern Company or the joint waters of the Logan Northern Company and the shareholders in the Logan Northern Canal, who did not join the Logan Northern Company, if any there be, or their successors in interest. The names or interests of such persons cannot be obtained from the record. It may be that all such persons joined the West Bench Company, but the record is silent thereon. We therefore cannot assume that the West Bench is the successor in interest or agent or trustee for any or all of such persons. If it is such successor in interest, such rights could properly be adjudged to the West Bench Company but until such showing it could not be so adudged.

What the court should have done was take evidence as to who were the present owners of the rights in the old Logan Northern Canal, originally acquired by the extension of that canal down Hillyard Lane or otherwise owners of which rights did not join the Logan Northern Company and the

amount of such interests. Such persons together with the stockholders in the Logan Northern Company who own lands upon which such waters could be applied would be entitled to the use of such waters as their respective interests may appear. Since the West Bench Company has not shown itself to be the successor in interest of any of these rights, nor otherwise interested in the waters of the Logan Northern Company or canal, the judgment as entered cannot stand. The judgment is reversed with leave to the parties to amend their pleadings if desired and to offer further evidence showing any interests in these waters in harmony with the views herein expressed and then to enter judgment accordingly.

Costs to appellants.

MOFFAT, J., concurs.

WOLFE, Chief Justice (concurring).

After this water passes the Gunnel flume it cannot be put to a beneficial use by Logan Northern. It further appears that it would not be practicably possible to return it to the stream from which it was originally diverted. In the use of water for irrigation some waste is inevitable. See Hutchins, Law of Water Rights in the West, p. 24. This water accumulating in Logan Northern Canal near the Gunnell flume apparently consists of seepage waters draining from the lands of Logan Northern stockholders and the waste water which drains from the lands of the stockholders of Logan Northern which water was not consumed in the process of irrigation. I, therefore, agree that this water must be considered to be "waste water."

I also agree that a claimant to waste water can acquire no permanent right to any specific quantity of water as against the appropriator nor is the appropriator under any obligation to permit any specific quantity of water to be discharged as waste water. The appropriator has no right to divert more waters than he can put to a beneficial use,.

and should waste as little as possible. See Kinney on Irrigation and Water Rights, Vol. 2, p. 1153. It has, however, been held that the

"right of the owner to cut off waste water to other lands is subject to the requirement that it be exercised in good faith, without malice," Hutchins, Law of Water Rights in the West, p. 367, citing Newton v. Weiler, 87 Mont. 164, 286 P. 133; Lambeye v. Garcia, 18 Ariz. 178, 157 P. 977; Green Valley Ditch Co. v. Schneider, 50 Colo. 606, 115 P. 705; Sebern v. Moore, 44 Idaho 410, 258 P. 176.

Logan Northern is not a party to this suit. I therefore do not deem it necessary to determine whether or not this water accumulating at the Gunnell flume is still Logan Northern's water. The matter is not without some doubt. No stockholders of Logan Northern diverted water at points below the Gunnell flume; Logan Northern apparently claimed no interest in the water except to see that it did not damage others; it apparently did not intend to recapture the water. Since it is possible that this would constitute an abandonment of this water on the part of Logan Northern which would put it out of the power of Logan Northern to sell, lease, or otherwise control it, I express no opinion on the statement made by Mr. Justice LARSON that the waters at the Gunnell flume "are waters of the Logan Northern Company." A question similar to this was presented in *Schulz* v. *Sweeny,* 19 Nev. 359, 11 P. 253, 254, 3 Am. St. Rep. 888, in which a company used water to carry wood from the mountains through a flume. At the point of discharge upon a mountainous ridge the water was allowed to run to waste. The company for a valuable consideration leased the water which would be discharged from the mouth of the flume during the remainder of the year to the defendant. The Supreme Court in holding that the defendant acquired no rights in the water by virtue of the lease stated:

"The water was discharged from the flume for the purpose of getting rid of it, and left to find its way to the natural level of the country, through the lands of others, without intention to reclaim or enjoy it. Neither company undertook to exercise any control over

the water after it was discharged, save to direct it to one valley or the other, and so as to do no injury to settlers along its course. These facts are conclusive evidence of an abandonment."

See also *Vaughan* v. *Kolb*, 130 Or. 506, 280 P. 518, 521, wherein the court stated:

"If the city of Baker merely allowed the water in its reservoir to escape as waste water with no intent of recapturing or enjoying it, and allowed it to find its way to the natural level of the country, its natural destination said to be Powder river, as we understand the complaint to allege, then the city after such water had escaped had no interest therein and could not confer any right either upon the plaintiff or defendants Kolb. The waste water was then subject to appropriation under the statute the same as any other water."

Several states, including Colorado, Idaho, Oregon, Montana, Nebraska and others, have statutes which made seepage and waste waters subject to appropriation under certain conditions. See Weil, Water Rights, 3rd Ed., Sec. 55. However, in the absence of such a statute it is generally held that such waste water and seepage water cannot be appropriated. See *Binning* v. *Miller*, 55 Wyo. 451, 102 P. 2d 54, 62, and cases discussed therein. During the times when an appropriation could be made by merely diverting the water and putting it to a beneficial use, Utah had no such statute. We need not decide whether present statutes authorize the appropriation of waste waters such as these for neither the plaintiff nor the defendants have made a statutory appropriation.

The plaintiff apparently bases its claim to the exclusive right to the use of this waste water whenever it is available upon the fact that it has been using such waste water for a long period of time without interruption. However, I do not believe that an exclusive right to the use of waste water can be acquired in this manner. This situation was discussed in *Binning* v. *Miller*, supra, where the court referred to such waste water as fugitive water and compared plaintiffs and defendants to two hunters trying to shoot down wild birds. It stated that the unsuccessful hunter could not complain

because the other gets a bird. The court further stated that if A abandoned a purse each year for a number of years and B picked up the abandoned purses for a number of years, B would still not be in a position to complain if A picked it up himself one year. It would seem that this reasoning would apply to this situation. Logan Northern has abandoned water each year; plaintiff has used it for a number of years, then defendants take it one year—the plaintiff would not be in a position to complain. Logan Northern is not abandoning a right which the plaintiff could secure; it is abandoning water and the water is not the same from year to year. It is different water that is abandoned each time and the plaintiff, unless the law gives it that right, cannot complain because another stranger beats it to the water at any given time. As far as can be told from the record plaintiff is a stranger to Logan Northern. As such, plaintiff has been using this abandoned waste water for many years. But by such long usage plaintiff has neither obtained a right to have Logan Northern continue to abandon water in the future nor the right to exclude other strangers from scrambling for any water which may be abandoned in the future. However as stated in *Binning* v. *Miller*, supra:

"if a party has once obtained possession of such water, and another party not entitled thereto should attempt to deprive him thereof, the possessor would doubtless have a cause of action. Wiel, supra, Sec. 55."

Now as to the rights of the defendants to exclude the plaintiffs from future use of this water. Mr. Justice LARSON concludes that this is an Irrigation Company in which the waters are held as owners in common. I am unable to locate anything in the record which reveals whether the water is held in common through the corporation or only the canal facilities for transferring and applying it are mutual or whether it is an ordinary stock company where the water is conveyed and stock issued for it. The purposes for which

a corporation is organized are limited to such as are expressly defined in its articles of incorporation except as to those other powers which are necessarily incidental to such expressed purposes. *Davis* v. *Flagstaff Silver M. Co.*, 2 Utah 74; 4 Tomp Corp., Sec. 5638. It may be the usual practice in mutual irrigation companies to have legal title to the water in the corporation in trust for the benefit of the stockholders as owners in common. But the terms of the trust are governed by the articles. The articles of Logan Northern are not in the record. I do not think that this court can assume from the fact that the parties refer to Logan Northern as a mutual water company, that it is merely a trustee of the water, or that it is a corporate water master with no power to buy or sell water, or that the stockholders of that company are owners in common of the water. I do not believe that there is sufficient evidence in the record to justify a holding that either the plaintiff or the defendants have any right to this water except as they are able to take possession of it after it has been abandoned.

It therefore follows that I agree that the judgment of the lower court should be reversed. However, the evidence adduced thus far would not permit the entry of a decree quieting title in either the plaintiff or the defendants.

WADE, Justice (concurring in the result).

I concur with the result reached in Mr. Justice LARSON'S opinion on the following grounds: All of the waters in question as long as they remained in the canal of the Logan Northern Irrigation Company were originally its property. That company had the right to make such beneficial use thereof as it saw fit. This was true both as to the waters which flowed through the canal without being diverted and used and the waters which were used and later returned to the canal by surface flow and seepage. Unless plaintiff has acquired the right to use these waters they are still the property of the Logan Northern Irrigation Company and it may in good faith put them to any beneficial use it sees fit

even though in so doing it will interfere with plaintiff's use thereof.

Plaintiff claims to have acquired such right by appropriation and adverse use. It has not acquired any such right by either of those methods since 1922 because its use thereof since that time has only been a scrambling one, and it could not acquire such right by appropriation since that time because it has not filed an application to do so in the office of the state engineer as required by statute. Sec. 34, Chap. 100, Session Laws of 1903, which as amended is now 100-3-1, U. C. A. 1943.

Did plaintiff prior to 1903 acquire by appropriation the right to the use of that part of the waters in question which were not diverted from the Logan Northern Irrigation Company's Canal or used before plaintiff put them to a beneficial use? This question has already been litigated between plaintiff and the Logan Northern Irrigation Company and therefore cannot again be gone into now. In 1922, in the case of Utah Power and Light Company v. Richmond Irrigation Company, to which action both plaintiff and the Logan Northern Irrigation Company were parties, a general adjudicaton of the rights to the use of the waters of Logan River was made. In that action plaintiff was awarded no right to the use of waters diverted from the Logan River through the Logan Northern Canal and it is therefore barred from asserting such right now. I can see no good reason why plaintiff could not make a valid appropriation of waters which were being diverted into Logan Northern Canal but not used by that company's stockholders, if plaintiff put the same to a beneficial use. However, for the reasons above stated it is not necessary to decide this question now.

As to the waters which have once been used by the stockholders of the Logan Northern Irrigation Company and again returned into its canal, plaintiff can acquire no right to the use thereof as against the original appropriator either by adverse user or by appropriation. It is well established in this state and in other western states, in the absence of

a statute to the contrary, that the original appropriator may change its manner of use, or use the water over and over again, as long as it does so in good faith, and such water does not escape from its property and control. This is true, even though in the past such water has been allowed to flow onto the property of another who has there put it to a beneficial use, and such changed use interferes therewith. This water still being in the possession and control of the Logan Northern Irrigation Company, plaintiff could acquire no right to the use thereof as against the company.

The defendants and interveners are stockholders in the Logan Northern Irrigation Company but plaintiff is not. The stockholders of a mutual irrigation company are tenants in common to the right to the use of its waters. *Hough* v. *Porter*, 51 Or. 318, 95 P. 732, 98 P. 1083, 102 P. 728. As between a tenant in common of property and a complete stranger to the ownership thereof the tenant in common has a better right to the possession and use thereof. To this effect are the cases cited by Mr. Justice Larson. Thus as between the plaintiff and defendants and interveners, the latter have the better right to the use of these waters.

McDONOUGH, J., concurs in the opinion of Mr. Chief Justice WOLFE.