JACKSON v. SPANISH FORK WEST
FIELD IRR. CO. et al.

No. 7450.   Decided October 2, 1951.   (235 P. 2d 918.)
(On Rehearing.)

See 67 C. J., Waters, sec. 535.  Appropriation of waters, future appropriator as affected by.  56 Am. Jur., Waters, sec. 304; 121 A. L. R. 1044.

*Elias Hansen,* Salt Lake City, for appellant.

*Clinton D. Vernon,* Atty. Gen., for defendants.

*P. N. Anderson,* Nephi, *Dilworth Woolley,* Manti, for respondent.

*Christenson & Christenson,* Provo, amicus curiae.

WADE, Justice.

We granted a rehearing only on the question of whether plaintiff established a beneficial use of one cubic foot per second continuous flow of water during the non-irrigation seasons. The use claimed was to furnish water for a home and about 30 to 35 head of animals. Obviously, the quantity awarded is many times the amount consumed for those purposes.

No other party to this action claims the right to use this water so the award was made without a contest. If there are any present claimants to this water they were not parties to this action and are not bound by this decree, and any future appropriators would not be ■ bound by it either. Since the defendants do not claim this water, plaintiff could not acquire a right to its use by adverse user against them. Plaintiff argues that since the McCarty Decree adjudicated only rights to irrigation water, this non-irrigation water right was not affected by that decree and that he has acquired a diligence right to the use of this water by using it prior to 1903, when such a right could be acquired by beneficial use only.

The evidence as to time and quantity and manner of use of this water is very general and vague. Though this decree is not binding on any claimant to the use of this water either present or future, probably an erroneous award would give the appearance of a vested right, and the State Engineer, prospective appropriators and purchasers might be misled into treating it as such, which might lead to litigation, or to this amount of water being taken and used in a place where it could not return to this stream and thus other prospective claimants might be deprived of its use.

The testimony was not specific as to the quantity, nature or necessity for this large stream of water during the non-irrigation seasons, it was merely generally to the effect that his ditch was carrying a cubic foot per second the year round. There was evidence that a family living in the home and a number of animals used the water during that period. There was some evidence that during the summer months it was necessary to flood part of plaintiff's land in order to keep the water in his well fresh and fit for culinary use but this evidence did not apply to the non-irrigation season use.

Plaintiff argues that this large stream was necessary for the non-irrigation seasons in order to keep the well water fresh, and in the cold winter weather to prevent the stream from freezing. He contends that much of it is returned to the natural stream during this period by an open and above the ground flow and that all that was not thus returned and not actually consumed returned to the natural stream by seepage and percolation and therefore no one could be hurt by plaintiff using more than is necessary. There is no evidence that any of plaintiff's ground was flooded by this stream during the non-irrigation seasons, nor that this stream was necessary for that purpose during those seasons, or that a much smaller stream would not accomplish that purpose as well as a stream this large. Certainly no such stream would be necessary for that purpose during those seasons when the ground was saturated from rain, snow or the run-off waters which occur during a substantial portion of such time. If, under the present conditions, plaintiff requires the use of waters which he does not consume in order to keep the water in his well fresh, and to prevent freezing, then the court should so find and determine the nature and extent of such need, and the quantity of water which he requires for consumption in his domestic use. The award should not allow him water which is not necessary for these purposes, and the right to a non-consumptive use of these

waters should end whenever a satisfactory means of supplying his needs without using additional waters is provided. By so doing, there will be no future misunderstanding as to the exact nature of plaintiff's right.

In view of the foregoing situation, the former opinion is modified and the case is remanded to the district court with directions to grant a retrial as to the non-irrigation seasons water; the court to take evidence on the questions herein discussed and therefrom determine the quantity of water which plaintiff consumes for domestic use during these seasons, and the additional amount, if any, required under the present system in order to make that water conveniently available without unnecessary waste; and to make findings and decree covering such matters.

McDONOUGH, and CROCKETT, JJ., concur.

WOLFE, Chief Justice (concurring specially).

Accepting only for the purposes of this suit the plaintiff's own contention that the McCarty decree did not adjudicate water flowing during the non-irrigation season and hence for the purposes of this case that this is the first adjudication of such waters and that such adjudication being not part of the adjudication of a river system (which adjudication takes on the aspect of one in rem and may bind all parties joined or who should have appeared and adjudicated their rights) it follows that the statement that the decree herein is not binding on any but the parties to this suit, is correct. But since it is binding on the parties to this suit and their privies and assigns and is, at least as to non-irrigation season waters, erroneous because the right seemingly was not based on beneficial use of such non-irrigation season waters but on physical possession, I concur in the order herein insofar as it grants a new trial as to the issue of quantity of waters used beneficially during the non-irrigation season. I assume from the opening paragraph of the main opinion that the quantity found to

have been beneficially used for culinary and stock purposes during the non-irrigation season will, and of necessity, must be found to be considerably less than one second foot. While I was not satisfied that the proof established a right to the quantity decreed during the irrigation season was founded on beneficial use, the rehearing was limited to the issues relating to the non-irrigation season. I, therefore, feel bound by that limitation. Under the order of reversal the lower court is directed to ascertain not only the quantity which can be used beneficially for domestic purposes during the non-irrigation season, but is given the authority and duty to ascertain the amount if necessary "under the present system to make the water conveniently available." I am not sure that the present system of using water for domestic purposes during the non-irrigation season is not very wasteful. This may not be important so long as the unconsumed water eventually finds its way back to the same stream from which taken. But if we are to guard against the contingency of the such water "being taken and used in a place where it could not return to this stream" and to its likelihood of being treated as a vested right, I think the order of reversal should include the determination of means whereby the winter domestic uses could be satisfied by non-wasteful procedures rather than confining the issues for determination to the present system of using waters. I would specify in the order that the quantity needed under a system of usage which would make available the required waters for domestic purposes during the non-irrigation season with the least waste possible considering the practical exigencies of the situation.

HENRIOD, J., did not participate.