## LASSON v. SEELY.

No. 7603.   Decided November 19, 1951.   (238 P. 2d 418.)

See 78 C. J., Waters, sec. 543. Escaped Waters recaptured. 56 Am. Jur., Waters, secs. 175, 176; 89 A. L. R. 210.

*Dilworth Woolley, Manti,* for appellant.

*A. W. Jensen,* Ephraim, Utah, *Udell Jensen,* Nephi, for respondent.

McDONOUGH, Justice.

Defendant appeals from a judgment and decree whereby he is enjoined from maintaining a dam in a water-course known as Panawats slough, and incidental damages are

assessed against him for depriving plaintiff of water for irrigation purposes. Defendant contends: (1) That he was and is entitled to erect and maintain such a dam; (2) that plaintiff failed to show any actual damage; (3) that defendant was entitled to recover at least nominal damages on his counterclaim for trespass, and also recover costs.

Panawats slough is a water course, the flow of which is in a northerly direction. It is a tributary of Thistle Creek. The slough crosses a portion of defendant's 160 acre tract of land. His land is some distance south of plaintiff's land. Plaintiff is the owner of the right to use the waters of Panawats slough except for two five-day turns for other lower water users, by virtue of a decree dated September 28, 1894. This slough flows as a result of certain springs, and also by the accumulation of run-off of rain water and melting snow, as well as by percolating water which finds its way into the stream as the result of application of irrigation waters on higher ground. Some surplus waters as well as waste waters from irrigation systems at higher elevations, over a period of years, have augumented the natural flow of the slough. Among these waters are the canal waters of Indianola Irrigation Company, in which company defendant is a shareholder. The flow of Panawats slough, therefore, has not been constant, but it has fluctuated greatly, according to the amount of rainfall, and the flow of springs which have fed the natural flow of the stream, as well as the quantities of water wasted from irrigation systems within the catchment area. Plaintiff contends that he is entitled to have come down to him, not only the natural flow of the slough, but also the waters which have heretofore drained into the slough from the irrigation systems, notwithstanding the irrigation waters which have eventually reached the slough have been principally waste waters. Plaintiff claims that no one may erect a dam across the slough to impede the flow of the stream, regardless of the origin of the water. On the other hand, defendant

claims no right to use any part of the natural flow of Panawats slough; but he contends that he has a legal right to prevent his surplus irrigation water from going down to plaintiff, and also to utilize his canal water on his own lands as he sees fit. He argues that he has no duty to cause his irrigation water to flow down to plaintiff. In this connection, he contends that he has a right to erect a dam across the slough upon his own land, in order to raise the level of the stream by draining sufficient irrigation water into the slough to enable him to utilize his surplus irrigation water obtained through the Indianola canal, upon a tract of land lying westerly from the slough. He also claims the right to erect dams upon his own land across the slough for purposes of flood control and to prevent erosion.

In order to bring irrigation water across the slough to utilize it on a tract of land westerly from the slough, defendant must either: (a) construct a flume or other conduit across the slough at a sufficiently high level, or (b) construct a dam of sufficient height to raise the water level of the slough to a point that his surplus irrigation water (which otherwise would be waste water), will flow onto his ground on the westerly side of the slough.

When defendant purchased the land in 1947 he observed that a number of gullies had been washed in the channel of the slough 3 and 4 feet deep, as a result of floods, and that under the railroad bridge the bed of the slough had been washed to even greater depth. He plowed contour furrows on the slopes toward the slough, in order to retard the run-off of rain and irrigation water. In 1948, defendant commenced construction of a dam across Panawats slough, within the boundaries of his own land, for two alleged purposes: (1) To raise the water level to such a height that his irrigation water could be used on his land west of the slough, and (2) to prevent further erosion of the stream bed and to remedy flood damage, aid in future flood control, and restore the stream bed to the condition in which

defendant knew it to be during the years prior to flood erosion. He made a dam of earth and debris, the latter being acquired in the process of a clean-up of junk and other refuse from his land. He made no plan and made no provision for installation of any controls or measuring device. During the early part of June 1949, he added some rubbish and hay. He testified that there was a substantial flow in the slough prior to June 15 by reason of the fact that irrigation waters were permitted to flow over the meadows and drain into the slough; but that after June 15th irrigation water was distributed on "turns" to shareholders, which cut down the amount of drainage into the slough.

Plaintiff kept measurements of the water of Panawats slough which flowed over a weir near his land. Up to June 15 there was a substantial flow. Between June 15 and 17, 1949, he was watering a tract of 25 acres of wild hay, alfalfa and grain. On the latter date he measured the flow of 1.36 c.f.s. of water coming over the weir; but on June 21 the flow had dropped to .34 c.f.s. Consequently, he followed the slough on to defendant's land and found the dam. He testified that he saw no water coming through the dam, and that the water behind the dam was about three feet in depth and considerably below the top of the dam. It rained on June 23 and the flow across his weir was 1.12 c.f.s. From June 27 to July 16, 1949, the flow was constantly at .51 c.f.s., except on June 30 (which was the day after the dam was torn out) when the flow increased to .72 c.f.s., and on July 4 when the flow was .65 c.f.s. On June 28 when plaintiff made his second trip to the dam, be observed that water was leaking through the dam. On June 29, plaintiff and his agents came on to defendant's land, and over the protest of defendant tore out the dam. There was a substantial flush of water going down the slough towards plaintiff's land immediately following the tearing out of the dam. Plaintiff observed that prior to releasing this impounded water, the water had

backed up in the slough for a distance of more than 1700 feet south of the dam.

Plaintiff instituted this suit for injunction and for crop damage allegedly caused from loss of water for a period of June 16 to June 29. Defendant counterclaimed for trespass. The trial court awarded plaintiff damages for partial loss of crops as well as for the expense of tearing out the dam, and entered a restraining order to enjoin defendant from constructing or maintaining any dam in the slough, except that he was permitted to construct check dams of such character as

"not to destroy the present perpendicular banks or alter the bed of said stream, or appreciably interfere with or obstruct the usual, ordinary and continuous flow of the water therein to the plaintiff's land."

The court denied defendant any relief on his counterclaim.

As previously indicated, plaintiff contends that defendant had no right to build any such dam, and he further argues that defendant had no right to take any measures which would impede the flow of surplus or waste irrigation water into the slough. Under a claim of prior adverse use for a period of many years, plaintiff claims a right to all of the surplus irrigation waters, and he insists that defendand must continue to allow those surplus and waste irrigation waters to reach the slough regardless of defenddant's desire or ability to use those waters, by reason of the fact defendant and other users of irrigation waters on higher ground have permitted their surplus irrigation waters to drain into the slough for a number of years.

The decree appealed from permits defendant to erect check dams on his own land within Panawats slough, to prevent floods and further erosion. However, it does not by its terms permit him to remedy the wasteful effects of prior flood damage, nor to fill in the gullies which defendant claims are a menace to livestock,

nor do other things which he is legally entitled to do. He is entitled by law to use his land in such a manner that he does not interfere with property rights of others. He may take such flood control measures on his own land as he sees fit, and also remedy the effects of floods, provided that he does not interfere with the water rights of plaintiff and others.

However, the dumping into the channel of various kinds of rubbish may tend to create a nuisance if it results in catching brush and other debris which comes down in periods of heavy rains, and thereby blocks the normal flow of the stream or unlawfully befouls the stream or chokes upon the channel below. A landowner must take measures which are reasonable. In this case, the defendant made no effort to measure the flow of the slough, nor to establish and control device which would assure the proper flow of the stream. .

It is clear from the evidence that defendant did not make any application to the State Engineer to erect a dam in the slough for the purpose of permitted under Sec. 100-3-20, U. C. A. 1943. The statute provides:

"Upon application in writing and approval of the state engineer, any appropriated water may for the purpose of preventing waste and facilitating distribution be turned from the channel of any stream or any lake or other body of water, into the channel of any natural stream or natural body of water or into a reservoir constructed across the bed of any natural stream, and commingled with its waters, and a like quantity less the quantity lost by evaporation and seepage may be taken out, either above or below the point where emptied into the stream, body of water or reservoir, but in so doing the original water in such stream, body of water, or reservoir must not be deteriorated in quality or diminished in quantity for the purpose used, and the additional water turned in shall bear its share of the expense of maintenance of such reservoir and an equitable proportion of the cost of the reservoir site and its construction. Any person having stored his appropriated water in a reservoir for a beneficial purpose shall be permitted to withdraw the same at such times and in such quantities as his necessities may require; *provided,* such withdrawal does not interfere with the rights of others."

Defendant apparently seeks the benefits of the foregoing statute without compliance therewith. In order to obtain approval of such an applicaton, were he to file one, he would have to make provision for appropriate measuring device and controls to assure that the plaintiff as appropriator of the stream will not be deprived of the water to which he is entitled. In the absence of compliance with the foregoing statute, if the defendant permits surplus or waste water to flow or percolate into the slough, he loses dominion over such water.

In view of the establishment of water rights in Panawats slough by decree in 1894 in favor of plaintiff's predecessor in title, it is contended by plaintiff that under no circumstances could a dam be erected lawfully across the slough. The filing and approval of an application for construction of an appropriate dam on the defendant's own land, would not necessarily interfere with plaintiff's decreed water right. The fact that plaintiff is entitled to the entire flow of the slough during certain periods of the year, does not mean that defendant or others similarly situated must permit any specified portion of their irrigation waters to drain into the slough. The evidence suggests that plaintiff does not utilize all of the water, and therefore he does not apply to beneficial use all of the water which actually reaches the slough. The flow thereof fluctuates so greatly, that plaintiff cannot beneficially use the entire flow at all times.

We therefore do not agree with plaintiff's contention that defendant or others using irrigation waters as upper appropriators cannot utilize water more efficiently in the future than in the past, if such future use would diminish the quantity of surplus or waste water which has heretofore found its way into the slough through surface drainage or by percolation. The plaintiff cannot compel defendant or others to waste water nor to forego a water turn to build up the flow of Panawats slough. There are various times when plaintiff could not use all of the water which

gets into the slough. Defendant and other irrigators on higher ground do not always use the full quantity of irrigation water to which they are entitled as shareholders in the Indianola Irrigation Company, for several practical reasons: Sometimes rainfall makes irrigation unnecessary; and at other times the use of water during harvesting operations would not only be useless but detrimental.

During a part of the year the irrigation water is permitted to flow over the meadows and a substantial part of it finds its way into Panawats slough; but commencing June 15 the Indianola Irrigation Company generally distributes the water on "turns" to shareholders, which cuts down the flow into the slough. As a shareholder, defendant has the right to draw on a certain portion of the irrigation canal stream. While the water is under his dominion and control, he is entitled to use it on his own land in such beneficial manner as he sees fit, or he may use it or any part thereof on other land under his control, or he may lease to others the right to use such water or some portion thereof. As stated in *Smithfield West Bench Irrigation Co.* v. *Union Central Life Ins. Co.,* 105 Utah 468, 472, 142 P. 2d 866, 868:

"* * * While in his ditch or upon his land it was his property and he could use it as he saw fit. When the water reaches the lower end of his land, he may again gather it into a ditch and convey it to any other land, ditch or reservoir he desires for further use; or he may lease or sell it. But once the water has passed onto the land of another and out of the control of the user, the right to use such water passes to the occupant of the land upon which it then is found, or may become water unused by any one and subject to capture and use by the first person to capture and use it. If while so free, it flows into another stream it becomes part of such stream. * * *"

As stated in the concurring opinion of Mr. Chief Justice WOLFE:

"I also agree that a claimant to waste water can acquire no permanent right to any specific quantity of water as against the appropriator nor is the appropriator under any obligation to permit any

specific quantity of water to be discharged as waste water. The appropriator has no right to divert more waters than he can put to a beneficial use, and should waste as little as possible. * * *"

The defendant is entitled to cultivate his own lands in such a manner as to utilize the water to which he is entitled as a shareholder in the irrigation company. The mere fact that while he has a water turn he may decide to permit the major part to go down stream or get into the Panawats slough as surplus or waste water, because he is temporarily unable to use the water while harvesting hay or grain, or because he needs less water on the particular occasion as a result of rainfall, would not give plaintiff a right to require defendant to continue to release such quantity of water in the slough. If defendant desires to use some of his irrigation water on land west of the slough, he may erect a flume or other type of conduit above or over the slough to bring such water across; but once he has allowed the water to get down into the slough he cannot take it out again without compliance with the provisions of Sec. 100-3-20, supra. In order to use the water which he is entitled to use as a shareholder of Indianola Irrigation Company, he must not only keep that water on his own land, but also under his control.

The defendant is not precluded from changing the type or quantity of vegetation on his land, although by so doing less water may find its way into Panawats slough through percolation. An appropriator of water may in good faith utilize the quantity of water to which he is entitled, although his previous methods of use were inefficient and resulted in returning surplus or waste water into the stream. The decree of 1894 on which plaintiff relies, merely awarded the entire flow of Panawats slough to plaintiff's predecessor in title. It did not preclude more efficient use of the water by upper appropriator nor require upper appropriators to send any quantities of water into Panawats slough. The decree does not compel any upper appropriator to waste water nor to leave a surplus

of water to drain into the slough. Nor could the decree direct the upper appropriators as to how they should utilize the water which they are entitled to use.

Defendant also contends that plaintiff suffered no actual damage. There is evidence that plaintiff reasonably expended $20 to tear out the dam. However, with respect to the alleged loss in the nature of diminished hay and grain crops, the evidence is insufficient to sustain any judgment for any such alleged loss. Plaintiff predicated his damage claim on being reprived of the water to which he was entitled for a period of June 16 to June 29, 1949. While he showed measurements of the stream to indcate that there was a substantial flow of water across his weir up to June 15 and a decreasing flow after that date, he failed to show that defendant was responsible for that lessened flow except on June 21, 1949. It was on June 21 that the flow diminished to .34 c.f.s. over his weir, and he went up stream to find out the cause of the loss of water. He testified he found the dam and also that no water was coming through or over the dam. He did not prove that the dam was erected on that day nor during a few days prior thereto. His own measurements indicate that on June 17 the flow was 1.36 c.f.s. Although he testified that on June 21 it was down to .34 c.f.s. and that the quantity was insufficient for his needs, he did not show that he was deprived of water for more than a day, nor that the damage which he claimed, could have been caused by deprivation of water for one single day.

On June 23 it rained and the flow across the weir increased to 1.12 c.f.s. From June 27 to July 16, 1949, except for two days, the flow was .51 c.f.s., and this flow was the same after the dam was torn out as it was for two days prior thereto. If the same amount of water seeped through the dam as flowed in the stream bed after the dam was removed, it could hardly be said that the dam stopped the flow of the water or diminished the quantity.

The only two days during which the flow increased during the 19-day period mentioned, were June 30 when the flow was .72 c.f.s. and on July 4 when the flow was .65 c.f.s. Plaintiff's own proof indicated that the same quantity of water flowed through or over the dam for two days prior to the date when the dam was torn out as for more than two weeks thereafter.

Furthermore, notwithstanding plaintiff's testimony that his land needed watering, he admitted on cross-examination that on June 29 when he broke the dam there was a considerable flush of water in the slough as a result of releasing the impounded waters back of the dam. He also admitted that he cut his hay sometime between July 4 and 10, 1949, and that several days prior thereto he had to turn off the water to permit the land to dry out a little as it was too wet. He testified that he had to allow his hay land to dry out sufficiently to enable him to get his machinery on to the land to cut the hay. Apparently, he failed to utilize all of the water available because it was to his interest to diminish the use in preparation for harvesting. The mere fact that he had less hay and less grain in 1949 than in 1948, did not warrant a finding to the effect that it was due to lack of water, nor if due to lack of water that it was due to the erection and maintenance of the dam by defendant.

The final contention of defendant is that he should have been awarded at least nominal damages on his counterclaim for trespass, and also costs, since the plaintiff did not follow the stream bank but took a more convenient path across defendant's field to reach the dam. Obviously, the erection of the dam in question without filing an application therefor with the State Engineer, was a wrongful obstruction of the water course. If not actually a continuing nuisance, it was such a threatened nuisance to plaintiff that plaintiff was entitled to take appropriate measures to remove the obstruction. The dam obstructed the normal flow of water in the slough for one

day at least. Plaintiff as an appropriator of water had the right to remove such obstruction, and he was not required to wait until he could demonstrate that such wilful obstruction partook of the character of an actual nuisance. A technical trespass occurred in remedying the wrong. However, no actual damage to defendant's land was shown to have resulted from such technical trespass in going over defendant's land at a place other than along the stream bank.

Defendant was entitled to not more than nominal damages, inasmuch as there was no actual damage. Defendant contends that such an award would have entitled him to costs. But in order to have become entitled to costs in the lower court, defendant would have had to be the prevailing party in the sense that the relief awarded to him would be greater than the relief awarded to plaintiff, which was not the case. If plaintiff had failed to prove any actual damage or any other basis for judicial relief, defendant would have been the prevailing party and entitled to recover his costs even in the absence of an affirmative judgment against the plaintiff.

The judgment and decree of the district court is erroneous in part. The cause is therefore remanded to the district court with directions to vacate the judgment and to enter a new judgment as follows: Allow plaintiff $20 damages only, less nominal damages to defendant; enjoin defendant from erecting any dam which will impound the water or obstruct the flow of water of the slough until or unless he first obtains approval of application for such purpose from the State Engineer; provided, that defendant shall be allowed to conduct his surplus canal water onto other portions of his land by flumes or other conduits which prevent irrigation waters and other surface waters from draining into the slough, and he shall be allowed to take such flood control measures which will remedy prior flood

damage and excessive erosion without interfering with the flow of water which actually reaches Panawats slough.

Each party shall bear his own costs on this appeal.

WOLFE, C. J., and WADE and CROCKETT, JJ., concur.

HENRIOD, J., did not participate.