## McNAUGHTON et ux. v. EATON et al.

No. 7646.   Decided March 25, 1952.   (242 P. 2d 570.)

See 67 C. J., Waters, sec. 450. Water diversion method, appropriation, affected by. 56 Am. Jur., Waters, sec. 304; 121 A. L. R. 1044.

*Colton & Hammond,* Vernal, *Dillman & Dillman,* Roosevelt, *Elias Hansen,* Salt Lake City, for appellants.

*E. W. Clyde,* Salt Lake City, *Ray E. Nash,* Vernal, for respondents.

WADE, Justice.

The defendants use the waters of McNaughton Gulch below plaintiffs' land, near Vernal, Utah. They appeal from a judgment holding that the waters in question are percolating waters and a part of plaintiffs' soil and therefore not public waters nor subject to appropriation. The court further held that plaintiffs' right to such waters is not subject to any control nor limited to a beneficial use. Defendants contend that these are public waters and subject to appropriation and that the right to the use thereof is limited to the amount required to satisfy the reasonable and efficient beneficial use to which they have been appropriated. Defendants do not seriously contend that their appropriations are prior to plaintiffs. If these are public waters defendants, as junior appropriators, are entitled to the use of all the waters not required to satisfy all prior rights under reasonably efficient use. They claim that they were denied a fair trial because both parties assumed

throughout the trial that these were public waters and subject to appropriation and regulation and that the holding that they were not public waters, contrary to the theory of both sides, was made without giving them a fair opportunity to meet that issue which was not raised in the trial. They further contend that some of the facts found by the court are not supported by the evidence. Under the facts of this case we conclude that these are public waters of this state and subject to appropriation, and that plaintiffs' right to the use thereof under their prior appropriation is subject to regulation and limited to the amount required with reasonable efficiency to satisfy the beneficial use of their appropriation. In view of this holding it is not necessary to consider the other points raised.

There is little conflict in the evidence. Plaintiffs, Mr. and Mrs. McNaughton, own eighty acres of land through which the McNaughton Gulch passes. Their land is located near the center, from north to south of the west half of a section near Vernal, Utah, extending from east to west across that half section. It is divided into two square forty acre tracts, the north half of the east forty being contiguous to the south half of the one on the west. The gulch passes through the south side of these two forties taking a slightly south of easterly course. More than a mile upstream to the west of plaintiffs' land, this gulch is intercepted by the Ashley Upper Canal which is constructed as a tight dam across the gulch so that the water in the gulch above is turned into the canal, a headgate is placed in the east or lower bank of the canal to discharge water into the gulch. From this intersection the gulch runs slightly south of an easterly direction through two sections of ground where it intersects with the Ashley Central Canal at a roadway below all of the land involved in this action. The land for some distance on each side of the gulch slopes toward it thus forming a drain for the waters on either side. It was formed by erosion resulting from the natural drainage of waters from natural sources in the historic past before the

advent of the white man. The gulch varies from three to five rods in width and from five to fifteen feet in depth with steep banks on either side. The surrounding country is nearly flat with a gradual slope toward the gulch and generally to south of east. Defendants' lands are all located below plaintiffs' land in the east half of the same section.

This gulch was a natural water course before the advent of irrigation water in this neighborhood. Its steep banks and the fact that it drains the waters from the land on both sides clearly show that it was washed out by flood waters coursing through it. Much of the water which drains into it sink into the ground and reach it by underground flow. The only witness who saw the gulch before the application of irrigation waters on the surrounding lands said it was dry then. He testified that he saw the gulch first in 1885, the year the upper canal was constructed, when he was five years old or less. He does not tell the time of year nor whether it was a wet or dry season or year. Though during dry seasons prior to irrigation this gulch was dry we cannot escape the conclusion that during the wet seasons water flowed in it and formed a natural water course.

The flow of the water in the gulch was greatly increased by the application of irrigation water from and after 1886. Some of this increase resulted because some of the irrigation waters for plaintiffs' land were turned directly into the gulch and it was used as a lateral for some distance in carrying that water to those lands, sometimes waste or surplus canal waters were drained out of the canal into the gulch and some waters came from drainage and underground flow from the irrigation of the lands within the drainage area of the gulch. Defendants do not claim the right to use plaintiffs' canal water but even that water is appropriated and cannot be lawfully wasted. The gulch water was diverted and used on plaintiffs' land about as it is now before any such waters were diverted onto any of defendants' land and both were diverted prior to 1903

when the right to use public waters could be established by appropriation to a beneficial use. The trial court's finding that plaintiffs' rights are prior to defendants' are approved.

Plaintiffs divert these gulch waters by a number of dams. The highest one is about a quarter of a mile upstream from their land and the water is conveyed onto their land below by means of a ditch. The lowest one is on the boundary line between plaintiffs' two forties and only a little more than a quarter of a mile downstream onto their land from the west boundary line thereof. So that the water which plaintiffs claim, drains into the gulch through the lands of others for about four times as long a distance upstream than through plaintiffs' own land. All of these waters including those which are drained directly through plaintiffs' land into the gulch are collected into a stream into the land again so at the time of the diversion from the gulch they are in an above-ground stream and not diffused or percolating waters.

Beneficial use is the basis, the measure and the limit of all rights to the use of water in this state.[1] Such has been the law both under and before we had a statute to that effect. No one can acquire the right to use more water than is necessary, with reasonable efficiency, to satisfy his beneficial requirements,[2] even strangers have been allowed to make improvements to water systems which would save water and thereby acquire the right to beneficially use the water saved.[3] And water reduced

---

[1]Section 100-1-3. U. C. A. 1943.

[2]*Jackson* v. *Spanish Fork West Field Irr. Co.*, 120 Utah 509, 235 P. 2d 918; *Little Cottonwood Water Co.* v. *Kimball*, 76 Utah 243, 289 P. 116.

[3]*Eardley* v. *Terry*, 94 Utah 367, 77 P. 2d 362.

to possession may not lawfully, in bad faith, be wasted and thereby deprive others of its beneficial use.[4]

Prior to 1935 diffused seeping and percolating waters, not shown to be the source of supply of any stream flowing on the land of others, was considered a part of the soil and belonging to the owner thereof and therefore not public waters nor subject to appropriation.[5] This included artesian basins and other underground waters not shown to be flowing in well defined courses with banks and channels.[6] At that time we held that the waters of artesian basins belong to the public and are subject to appropriation and since no statutory provision had been made for their appropriation the right to use such waters had in the past been acquired by appropriation to a beneficial use the same as the right to use above ground streams had been acquired before the 1903 statutes requiring an application to be filed with the State Engineer for that purpose. See *Wrathall* v. *Johnson*, 86 Utah 50, 40 P. 2d 755; *Justesen* v. *Olsen*, 86 Utah, 158, 40 P. 2d 802. Immediately thereafter the legislature enacted laws requiring an application in order to appropriate such waters and the registration with the State Engineer of all existing claims to the right to the use of such waters, and amended several statutes to conform to the new conception.[7] Prior to those decisions Sec-

---

[4]See Chief Justice Wolfe's concurring opinion in *Smithfield West Bench Irr. Co.* v. *Union Central Life Ins. Co.*, 105 Utah 468, 142 P. 2d 866, 870, citing Hutchins, Water Rights in the West, p. 367, citing a number of cases to that effect.

[5]*Riordan* v. *Westwood*, 115 Utah 215, 203 P. 2d 922, and *Hanson* v. *Salt Lake City*, 115 Utah 404, 205 P. 2d 255, where the history of such holdings are traced.

[6]See *Horne* v. *Utah Oil Refining Company*, 59 Utah 279, 202 P. 815, 31 A. L. R. 883; *Glover* v. *Utah Oil Refining Company*, 62 Utah 174, 218 P. 955, 31 A. L. R. 900.

[7]See 1935 Laws of Utah Chapter 105, sections 100-1-1, 100-3-1, 100-3-22, 100-5-12. These sections have the same numbers in the U. C. A. 1943.

tion 100-1-1 R. S. U., 1933 provided:

"The water of all streams and other sources in this state, whether flowing above or under the ground in known or defined natural channels, is hereby declared to be the property of the public, subject to all existing rights to the use thereof."

In the *Wrathall* case, supra, Mr. Justice Moffat in the prevailing opinion construed that section to mean that all waters which are flowing, whether above or underground, belong to the public subject to all existing rights to the use thereof and that the right to the use of any such waters may be acquired by appropriation to a beneficial use. Mr. Justice Straup, in a concurring opinion which was required to make a majority of the court, seems to exclude from the public waters diffused, seeping and percolating waters which are not shown to contribute to a natural stream flowing beyond the boundary of the land of the owner on which such diffused waters are found. The legislature which was then in session, immediately amended the above quoted section which amendment is now Section 100-1-1 U. C. A. 1943 to read:

"All waters in this state, whether above or under the ground are hereby declared to be the property of the public, subject to all existing rights to the use thereof."

This amendment eliminated all question of whether or not the waters are diffused, seeping and percolating; of whether they are flowing or stagnant and does not even exclude therefrom waters which have been once appropriated and allowed to flow beyond the control of the appropriator. It declares all waters in this state

"to be the property of the public, subject to all existing rights to the use thereof",

and Chapter 3 of Title 100 provides the method whereby the right to the use of any unappropriated waters of this state may be acquired.

In 1949, we construed this amendment in the case of *Riordan* v. *Westwood,* 115 Utah 215, 203 P. 2d 922, 927. There we approved Westwood's application to appropriate a small stream of water which he produced by excavating in Riordan's land in a small wet spring area with only sufficient moisture to sustain some beneficial plant life but not sufficient to flow in a stream or reach any part of Riordan's farm or other lands beyond, finding reason to believe that a part of this stream might be appropriated by Westwood to a beneficial use without destroying the beneficial plant life which such diffused water supported. We quoted from the above amended action and said

"it is clear that the legislature intended, as far as it was legally possible, to declare all waters of the state, whether under or above the surface of the ground and whether flowing or not, to be public property subject to the existing rights to the use therof. Such has probably always been the law of this state regardless of this amendment."

Under that decision the only waters of this state which are naturally diffused and percolating through the ground and therefore belong to the owner of the soil in which they are found and are not subject to appropriation are limited to such waters which by their presence in the soil confer a natural benefit on the land which will be destroyed by the waters being appropriated. Here we are not dealing with the collection of diffused waters from the soil but with the right to use waters which have already collected in a stream in the bottom of a natural gulch, some of which have been applied to the land for irrigation and then seeped and percolated into the natural channel; however we should keep in mind that this is not the natural water course from which the canal water was originally diverted.

In *Lehi Irrigation Co.* v. *Jones,* 115 Utah 136, 202 P. 2d 892, we approved an application to appropriate waters which had been once appropriated and used and then allowed to seep and percolate from the lands of the original

appropriator into a natural water course beyond the control of the original appropriator.

Section 100-1-1, U. C. A. 1943, dedicates all the water of this state to the public use subject only to existing rights to the use thereof. It makes no distinction between previously appropriated waste waters which are beyond the control of the original appropriator and the flow of natural streams, and under section 100-3-1, U. C. A. 1943, and the following sections of that chapter all unappropriated public waters are subject to appropriation by compliance with the statutory regulations. Under similar statutes it is generally held that such waters are subject to appropriation and reasonable regulation in the interest of efficiency and to prevent waste.[8] But the re-appropriator of such waters cannot require that the first appropriator shall continue to waste such waters so that they will be available for use by the reappropriator. The original ap-

---

[8]Hutchins, Water Rights in the West, pp. 362-368, 127-137. See also *Wills* v. *Morris*, 100 Mont. 514, 50 P. 2d 862 at page 871: "In this case, the waters which are originally seepage are collected in the drain ditch and from that source are utilized for irrigation. In the *Popham* Case, on which plaintiff relies, the following observation was made: 'Where, also, vagrant fugitive waters have finally collected and reached a natural channel and thus lose their original character as seepage, percolating, surface, or waste waters, and flow with such regularity as above described, whether from rains raising the surface of a lake until it overflows (*Duckworth* v. *Watsonville Water & Light Co.*, 150 Cal. 520, 89 P. 338), seepage and percolation forming springs (*LeQuime* v. *Chambers*, 15 Idaho 405, 98 P. 415, 21 L. R. A., N. S., 76), surface water collecting in a canyon (*Denver, T. & Ft. W. R. Co.* v. *Dotson*, 20 Colo. 304, 38 P. 322), artificial water over which the creator has lost control (*Hagerman Irr. Co.* v. *East Grand Plains Drainage District*, 25 N. M. 649, 187 P. 555), water from artesian wells accidentally developed while drilling for oil (*De Wolfskill* v. *Smith*, 5 Cal. App. 175, 89 P. 1001), or water of a slough fed by seepage from irrigation (*McPhee* v. *Kelsey*, 44 Or. 193, 74 P. 401, rehearing 44 Or. 193, 75 P. 713), the waters flowing in such natural channel constitute a water course within the meaning of the law of water rights.' "

proprietor as long as he has possession and control thereof may sell or transfer the right to the use of such waters to someone other than the reappropriator as long as he does so in good faith and they are beneficially used, or he may recapture and use them for further beneficial use if he does so before they get beyond his property and control. See *Smithfield West Bench Irr. Co.* v. *Union Central Ins. Co.*, 105 Utah 468, 142 P. 2d 866, same case on second appeal, 113 Utah 356, 195 P. 2d 249; *Lasson* v. *Seely*, 120 Utah 679, 238 P. 2d 418.

The waters in the instant case reach the gulch by five different means: (1) Waters which drain into the gulch from natural sources; (2) canal surplus and waste waters turned into the gulch merely to get rid of them; (3) canal waters used to irrigate lands on both sides of the gulch which drain into it above plaintiffs' lands; (4) canal water used to irrigate plaintiffs' lands but drain into the gulch above plaintiffs' lowest dam; and (5) canal waters turned into the gulch to be used by them to irrigate their lands. The first three of the above divisions are subject to appropriation either as the waters of a natural stream or waters which have been once appropriated but allowed to drain into a natural water course beyond the control of the original appropriator. The last two divisions are not subject to appropriation because they are still in the possession of plaintiffs who have the right to use them under the original appropriation. The trial court correctly held that plantiffs have the prior right to the use of all of these waters, because as to the first three divisions they had first appropriated them to a beneficial use before 1903 when no application to appropriate was necessary, but the court erred in holding that plaintiffs' rights to the use of these waters are not subject to reasonable regulation and control in the interest of saving water. It is clear that all of these waters are subject to appropriation and the only right that can be acquired to their use is a reasonably efficient beneficial use, and defendants as

subsequent appropriators are entitled to the use of all of such waters not necessary to satisfy such requirements of plaintiffs.

The case is remanded with direction that corrections be made in accordance with this opinion. Cost to appellants.

McDONOUGH, CROCKETT and HENRIOD, JJ., concur.

WOLFE, Chief Justice (concurring).

I concur, but I reiterate what I said in my concurring opinion in the case of *Riordan* v. *Westwood,* 115 Utah 215, 203 P. 2d 922, that all rain and snow water belongs to the public regardless of whose land it falls upon. Like all fugitive substances, it can belong to no one else except the public. As the main opinion suggests, this must have always been so. The State through the Legislature progressively extended to various categories of water, procedures for acquiring use rights and general regulations to these categories as set out in detail in the main opinion. But the fact that the State progressively applied regulation to the acquisition of use rights in water does not disturb the fundamental principle that all water, whether in the form of rain, snow or ice, at least from the time it reaches land within the confines of this state belongs to the public— the people of this state. The legislature when in § 100-1-1, R. S. U. 1933 and in the amendment now section 100-1-1, U. C. A. 1943, declared certain waters "to be the property of the public," recognized a fact that had always been so. At this time we are not called upon to determine whether rain or snow reaching the ground belongs to the public before it touches the ground. We are not now confronted with any mechanical means of catching waters which drop from the heavens in quantity before they reach the earth and transporting them. But if scientific rain making will enable clouds to be moved from one locality to another and then disgorge their waters, we may see the time when the question of who owns the water in the clouds or, put another way, the clouds themselves may become important.

Order on Rehearing. May 2, 1952.

Upon consideration of the petition for rehearing heretofore filed herein and the arguments of counsel thereupon had, it is now ordered that the judgment of this court heretofore entered March 25, 1952 be, and the same is, amended by striking therefrom the award of costs to the appellants and substituting therefor no costs awarded to either party, and that the petition for rehearing be denied.