368 P.2d 461

**LeRoy STUBBS and Lake Bottom Irrigation Company, a corporation, Plaintiffs and Appellants,**

v.

**W. Morris ERCANBRACK, Defendant, Respondent and Cross-Appellant.**

No. 9433.

Supreme Court of Utah.

Jan. 31, 1962.

237 Iowa 377, 21 N.W.2d 769, 164 A.L.R. 943; also annotation of this question 164 A.L.R. 949–952.

Christensen, Novak, Paulson & Taylor, Provo, for appellant.

Ballif & Ballif, Provo, for respondent.

CROCKETT, Justice.

Plaintiffs Stubbs and Lake Bottom Irrigation Company complain that the installation

of a drainage and pumping system by defendant Ercanbrack on his land deprives them of waters to which they had established prior rights. Plaintiffs sought restitution of water, damages and an injunction.

The trial court confirmed the right of defendant to maintain the drainage system on his land and to use the water collected therefrom except it required him to allow plaintiff Stubbs a flow of three gallons per minute; awarded Stubbs damages of $314 for deprivation of that amount of water; and awarded the plaintiff irrigation company nothing.

Plaintiffs appeal, contending that the judgment was inadequate; and defendants cross-appeal, asserting that no judgment should have been granted to the plaintiffs at all.

Stubbs and Ercanbrack own adjoining farms between Orem and Utah Lake on the valley floor in Utah County. Stubbs' tract of 40 acres is just west of Ercanbrack's of 35. The plaintiff Lake Bottom Irrigation Company's canal runs along the lower edge of the Stubbs farm and forms its western boundary. The slope and drainage is westward and thus from Ercanbrack's towards Stubbs.

The Mt. Timpanogos area of the Wasatch Mountains rims the valley on the east. The snow and rainfall of these high mountains sinks beneath the surface and follows aquifer strata down into the valley toward the lake. In the lower valley where these farms are situated the water table is quite near the surface so that in places it crops out in springs and swampy areas. One of these, referred to as the Stubbs Spring, is just at the south side of the Ercanbrack's property, mostly in a road right of way. The evidence shows that beginning about 1890, Stubbs and his predecessors captured and put to beneficial use the water arising from this area by means of drains. Further efforts to control and utilize this water were taken: in about 1894 another drain (referred to as the east drain) was dug along the east side of the Stubbs property, which also captured water to augment the water coming from the spring, for irrigation of the Stubbs farm; in 1902 Stubbs' father constructed a water collection box in the Stubbs spring area and installed a pipe to carry part of this water to his menage: house, corral and chicken coops; in 1904 the east drain was further supplemented by a ditch which extended several hundred feet into Ercanbrack's property and drained water from a swampy area of about nine acres in the southwest corner of the latter's farm.

Stubbs has continued to use the water thus obtained for irrigation and culinary purposes, except that in 1943 he connected his house with the municipal water system. Since that time the piped spring water has been used only for chicken coops. The

trial court found that the water so piped and used was at least three gallons per minute. It was this water for which the court awarded damages and ordered it to be continued to be furnished to Stubbs.

The claim to water rights of the plaintiff, Lake Bottom Irrigation Company, is grounded upon the proposition that water developed in the Stubbs drains which was not used on the Stubbs property, was collected in its canal and has been distributed to its users along with its other water.

In 1955 Ercanbrack, with assistance from the U. S. Soil Conservation Service, installed a closed drainage system on his land. It served a dual purpose: of lowering the water table where excess water existed to make the land arable; and of collecting the drainage waters into a sump from which they could be pumped and used in a sprinkler type irrigation system to water his newly planted orchards. After these drains were installed the Stubbs spring area went dry and Stubbs was compelled to connect to the municipal water system for his coops; and after the Ercanbrack pump and sprinkler system was put in in 1958, the Stubbs drains also dried up and remained so throughout the irrigation season until the pumping stopped.

In 1956 defendant Ercanbrack filed an application with the State Engineer to appropriate the water collected in his drainage system. The plaintiffs filed objections and the application was later voluntarily withdrawn. Written notice asserting prior claim to the water was also sent to defendant Ercanbrack at the time he began the construction of his irrigation system and the installation of his pumps. To resolve the dispute over the issues raised by these happenings, the plaintiffs commenced this action.

The findings and decree are somewhat difficult to understand and reconcile. They make no allowance to the plaintiffs for any waters produced by the east drain. They appear to give lip service to plaintiffs' established rights in the water from the Stubbs spring and the south drain, and recite with respect thereto that the "defendant's rights are inferior and subject to the rights of the plaintiffs and defendant's use thereof is wrongful." But they ignore the fact that the installation of the defendant's drains and pumps dried up the latter sources. They seem to be susceptible of an interpretation that the defendant has a right to all of the percolating waters existing in his land. The findings recite:

"The defendant has the right to intercept and collect by means of his closed tile drains and said conservation project, all of the waters percolating on his land in said project area prior to the construction of said drains and project * * *."

and the conclusions state that:

"Defendant is entitled to maintain the conservation project * * * including the operation of the closed drains and pumping devices." [and]

" * * * to a decree of this court quieting title to him to all of the waters rising on the aforesaid project area. on his farm through percolations within his said lands as aforesaid * * * except the waters of said Stubbs Spring which have been intercepted by the construction of the defendant's said conservation project."

The fundamental issue underlying this controversy is whether the plaintiffs have the right to the use of water to which they had established prior rights as set forth in the fore part of this opinion, or whether the defendant in putting in his drainage system to change his swamp to useable land has the right to use the water developed therefrom. In support of his contention that he has such right, defendant relies on the recent case of Long & Co. v. Cannon-Papanikolas.[1] We do not regard that case as supporting his position. The holding was that under the circumstances there presented the defendants were not required to continue their land in a swampy condition. They were allowed to drain it to make

it useful. But they made no proprietary claim to the water involved as is done here. In the Long case we advisedly distinguished the issue there treated from cases such as the instant one, stating:

"It is to be borne in mind that this is not a case dealing with competing claims to the propriety [proprietary] use of water. The defendants are not seeking to appropriate water to which the plaintiffs had previously established rights to use. If it were so, *the plaintiffs as prior appropriators would own the right to the use of the water and such rights would be entitled to protection.*" (Emphasis added.)

The right to make use of one's land and the right to use water are two severable things. The waters of this state, whether upon the surface, or percolating in the soil underneath, belong to the public and are subject to appropriation for beneficial use; and when rights to such use have been established in accordance with law, they must be safeguarded.[2] Even though the defendant could drain his swampy land to make it useful, that does not mean that he would acquire the right to use the water developed from that area. It is obvious that if the owners of water rights can be deprived of them by someone digging into

---

**1.** 9 Utah 2d 307, 343 P.2d 1100.

**2.** See Section 73–1–1, U.C.A.1953; and Current Creek Irrigation Co. v. Andrews, 9 Utah 2d 324, 344 P.2d 528, and authorities therein cited.

**50**

and usurping this water at its source, then water rights become tenuous indeed, if not quite meaningless.

 Another contention of the defendant is that any water flowing into the Stubbs' drains from his property results from irrigation of his higher ground; that they thus constitute waste water in which the plaintiffs could acquire no rights; and that he is under no obligation to continue to waste water for their benefit. The answer to this contention is that the waters produced in these drains are not waste waters as referred to in the usual sense, nor did the trial court find them to be such. It did find that they resulted both from the irrigation of the defendant's higher ground and from the underlying water table. We are quite in harmony with the idea that water rights could not be acquired in waste water so that the defendant would be obliged to continue to irrigate his higher ground to provide water to be collected in the plaintiffs' drains.[3] But after the irrigation water is used and becomes comingled with the waters in the natural water table it has lost its identity as irrigation water and is no longer owned by the defendant as such. Such waters in the natural water table are and always have been subject to appropriation. As indicated in the Long case above, to whatever extent the plaintiff had law-

fully established prior rights to the use of water from these sources, their rights are entitled to protection and the defendant may not encroach thereon and usurp their water by means of his drains and pumps.[4]

A point is also made concerning the water to maintain the natural vegetation on defendant's land which he asserts the plaintiffs' drains tend to deplete. From the fact that the defendant found it necessary to install further drains in this nine-acre swampy area of his land, it would seem that the plaintiffs' drains have never taken such an amount of water from that portion of the defendant's lands that natural vegetation would not be sustained; and that the maintenance of the drains as they have been over the years will not result in any substantial harm to defendant's property in that regard.

We desire to emphasize that this decision is not intended to result in interfering with the right of the defendant to drain the swampy areas of his land to make it usable; nor with the right to use any water which such drainage may develop in excess of the water to which the plaintiffs have established prior rights, if there is any such excess.

It is necessary that this case be remanded for further proceedings consistent with the principles set forth in this opinion: to

---

3. See McNaughton v. Eaton, 121 Utah 394, 242 P.2d 570.

4. See Current Creek Irr. Co. v. Andrews, footnote 2, supra, and authorities therein cited.

determine and adjudicate to the plaintiffs the amount of water to which they had established rights prior to the installation of the defendant's drains and pumps; to enter a decree requiring the defendant not to interfere with nor diminish the flow of that amount of water; and to award plaintiffs damages, if any, they have suffered by defendant depriving them of such water.

Costs to plaintiffs (appellants).

WADE, C. J., and HENRIOD, McDONOUGH and CALLISTER, JJ., concur.