Marvin A. MELVILLE et al.,
Plaintiffs and Appellants,

v.

SALT LAKE COUNTY, a body politic, et
al., Defendants and Respondents.

No. 14786.

Supreme Court of Utah.
Oct. 13, 1977.

Joseph S. Knowlton, Salt Lake City, for plaintiffs and appellants.

R. Paul VanDam, Salt Lake County Atty., Kent S. Lewis, Donald Sawaya, Deputy Salt Lake County Attys., Salt Lake City, for defendants and respondents.

WILKINS, Justice:

Plaintiffs Renee B. Melville and Albion Basin Development Co. appeal from a judgment entered by the District Court for Salt Lake County, dismissing their complaint for writs of mandamus to compel Salt Lake County to issue building permits. Affirmed. No costs awarded.

All statutory references are to Utah Code Annotated, 1953.

In October of 1971, these two plaintiffs each separately applied to the Salt Lake County Building and Zoning Department for a permit to construct a four-plex on lots in an approved subdivision known as Albion Basin Subdivision # 1. Albion Basin is located above the Alta and Snowbird ski resorts, at the top of Little Cottonwood Canyon, east of Salt Lake City and is within the watershed of Salt Lake City. In November of 1971, Salt Lake County zoned Albion Basin, limiting construction in the area to one single family cabin per 50 acres of ground, and thereafter refused to grant the building permits. Plaintiffs joined with the other plaintiffs named above in a complaint challenging the zoning ordinance. Included in the complaint as the fourth cause of action is a petition for writs of

mandamus to compel the county to issue the permits applied for by these two plaintiffs. Upon appeal after the first trial in this case, this Court invalidated the zoning ordinance,[1] but Salt Lake County continued to refuse to grant building permits, maintaining that these plaintiffs had failed to meet requirements other than the zoning ordinance, and specifically, that they had not proved their rights to an adequate culinary water supply. On August 4, 1975, Salt Lake County enacted a zoning ordinance restricting construction in this area to one single family cabin per subdivision lot.

Plaintiffs were granted a new trial on their fourth cause of action, which commenced May 19, 1976. After this second trial, the District Court for Salt Lake County found that plaintiffs had not appropriated the use of water in Little Cottonwood Canyon and had failed to produce any evidence that any company or person with the right to the use of water in Little Cottonwood Canyon would provide water to plaintiffs' two proposed four-plexes.

Plaintiffs submit that they have a generous source of water, sufficient to supply both four-plexes in an amount to satisfy the Salt Lake County Board of Health's requirement of 400 gallons of water per day, per unit. That source of water is a spring located in the tunnel of the Alta-Helena mine, the portal of which is located on the property of Marvin Melville, one of the plaintiffs, but not a party to this appeal. The spring produces water at the rate of 20 gallons per minute. Mr. Hoffman, the chief of the Water Quality Section of Salt Lake County Health Department testified that a flow of 20 gallons per minute is adequate to supply the proposed two four-plexes with the 400 gallons of water per unit per day. It would seem, therefore, that the plaintiffs have proved that they have an adequate source of culinary water.

The fact that they have an adequate source, however, does not solve plaintiffs'

problem. They must also show that they have a right to use the water. Section 73-1-1 provides:

All waters in this state, whether above or under the ground are hereby declared to be the property of the public, subject to all existing rights to the use thereof.

Section 73-1-3 states:

Beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state.

█ These statutes are the codification of the basic law with respect to water in the state of Utah. No one owns or can own water in this state, regardless of whether that water is found in the form of a spring, stream, lake, pond or under the ground. One can only acquire the right to use the water. One's right to use water is measured by the amount he puts to beneficial use without interfering with another person's prior right to the use of the water.[2]

Plaintiffs argue that despite the above statutes, percolating waters belong to the owner of the land on which they are found, and that the water issuing from the Alta-Helena mine is percolating water within the definition of that term set forth in the case of *Riordan v. Westwood* [3] since the spring arises on the property, never leaves it, sinks immediately into the tailings of the mine, and cannot be traced onto lands of others.

The characterization of percolating water, as set forth in *Riordan*, on which plaintiffs rely, is as follows:

Where, as here, in its natural state water is diffused and percolates through the soil so near the surface that without artificial diversion or application *it produces plant life and thereby beneficially affects the land*, and where its course cannot be traced onto the lands of any person other than the owner of the land where it is found, such water is percolat-

---

1. *Melville v. Salt Lake County*, Utah, 536 P.2d 133 (1975).

2. *Sowards v. Meagher*, 37 Utah 212, 108 P. 1112 (1910); *Lasson v. Seely*, 120 Utah 679,

238 P.2d 418 (1951). See also *Riordan v. Westwood, infra.*

3. 115 Utah 215, 203 P.2d 922, 929, 930 (1949).

ing waters and as such are a part of the soil, they are not public waters, and the right to the use thereof cannot be acquired by appropriation under our appropriation statute. Such has always been the law of this State and still is. [Emphasis added.]

*Riordan* involved an appropriation by the defendant therein of spring waters located on plaintiff's lands which the plaintiff therein had never attempted to divert or put to beneficial use, but which did support a certain amount of plant life on the plaintiff's property. The defendant there had diverted part of the water for his own use, and this Court held that if there was sufficient water in the spring the defendant might appropriate such a quantity as would not destroy the plant life supported by it. In so doing the Court said:

In this state the beneficial use of all of its waters is of paramount importance. Waters, even though diffused and percolating through the soil which do not sustain plant life or otherwise beneficially affect the land through which they course are not necessarily a part thereof and to the end that they might be placed to a beneficial use should belong to the public and be subject to appropriation the same as other waters.

■ In the case at hand, the spring is located in a mine, and the water immediately sinks into the tailings. There is no evidence that there is any plant life supported by this water nor any other natural benefit conferred on the land thereby. This water would therefore be subject to appropriation. The plaintiffs do not own this water, and must prove some right to use it.

■ Plaintiffs assert that they have a right to use the water by virtue of a contract with Little Cottonwood Water Company, an entity entitled to the use of water in Little Cottonwood Canyon.

That contract provides that the "user" (of the water) proposes to construct "not to exceed 35 cabins" on Albion Basin Subdivision # 1, and the water company agrees to supply each cabin or structure so constructed, with a quantity of water not to exceed *50* gallons per day.

The President of the Little Cottonwood Water Company testified that the company would not willingly supply the plaintiffs with water in excess of the amounts set forth in the contract, and that the board of directors of the company did not feel it was obligated under the contract to deliver water to condominiums or any structures other than cabins. On the basis of this evidence the Court found that the plaintiffs had failed to produce any evidence that any company or person with the right to the use of water in Little Cottonwood Canyon would provide water to plaintiffs' proposed two four-plexes, and concluded that since the water company was not a party to this action, any dispute concerning the obligation of the water company to furnish water to the plaintiffs could only be decided in a separate lawsuit.

We find no error in the Court's findings. At most plaintiffs have proved that they *may* have a right to 50 gallons of water per unit constructed, which does not meet the County Board of Health's requirement of *400* gallons per unit per day.

ELLETT, C. J., and CROCKETT and MAUGHAN, JJ., and HENRIOD, J, Retired, concur.

HALL, J., having disqualified himself, does not participate herein.